RELIEF FIRE INSURANCE COMPANY OF NEW YORK v. SHAW.

1. Unless prohibited by statute or other positive regulation, a valid contract of insurance can be made by parol.
2. There is nothing in the charter of the plaintiff in error, nor in c. 196, sect. 1, of the acts of Massachusetts for 1864, which prohibits it from entering into such a contract in that State.

ERROR to the Circuit Court of the United States for the District of Massachusetts.

*Mr. J. G. Abbott* for the plaintiff in error.

*Mr. E. F. Hodges, contra.*

MR. JUSTICE BRADLEY delivered the opinion of the court.

The principal question in this case is, whether a parol contract of insurance, made on behalf of the plaintiff in error by its agent in the city of Boston, was valid.

That a contract of insurance can be made by parol, unless prohibited by statute, or other positive regulation, has been too often decided to leave it an open question. That it is not usually made in this way is no evidence that it cannot be so made. To avoid misunderstandings in a contract of such importance and complexity, it is undoubtedly desirable that it should always be in writing; and such is the requirement of many codes of commercial law. But the very existence of the

requirement shows that it was deemed necessary to make it. The question came before the Supreme Judicial Court of Massachusetts in 1860, on a contract made under circumstances very nearly similar to those of the present case; and it was adjudged that a parol contract of insurance can be made. *Sanborn* v. *Firemen's Insurance Co.*, 16 Gray, 448. The court in that case says:—

"No principle of the common law seems to require that this contract, any more than other simple contracts made by competent parties upon a sufficient consideration, should be evidenced by a writing. No statute of Massachusetts contains such a requirement. Upon principle, therefore, we can find no authority in courts to refuse to enforce an agreement which the parties have made, if sufficiently proved by oral testimony."

This decision being directly in point, and being made by the highest court of the State where the present contract was made, is entitled to the highest consideration. The Court of Appeals of New York held the same doctrine in 1859, in the case of *The Trustees of the First Baptist Church* v. *Brooklyn Fire Insurance Co.*, 19 N. Y. 305. Judge Comstock, delivering the opinion of the court, after briefly and accurately stating the history of policies of insurance, in regard to this point, says:—

"The contract, as I have said, had its origin in mercantile law and usage. It has, however, become so thoroughly incorporated into our municipal system, that a distinction which denies the power and capacity of entering into agreements in the nature of insurances, except in particular modes and forms, rests upon no foundation. The common law, with certain exceptions, having regard to age, mental soundness, &c., concedes to every person the general capacity of entering into contracts. This capacity relates to all subjects alike, concerning which contracts may be lawfully made, and it exists under no restraints in the mode of contracting, except those which are imposed by legislative authority. There is nothing in the nature of insurance which requires written evidence of the contract. To deny, therefore, that parol agreements to insure are valid would be simply to affirm the incapacity of parties to contract where no such incapacity exists, according to any known rule of reason or of law." See also May on Insurance, sects. 14–23, and *Kelly* v. *Commonwealth Insurance Co.*, 10 Bosw. 82.

We have been referred to the case of *Cockerill* v. *Insurance Company*, 16 Ohio, 148, in which it is held that a parol contract of insurance is not recognized as valid by the commercial law, but must be expressed in a written policy. We have also been referred to Duer on Insurance, p. 60, and to Millar on Insurance, p. 30, which are to the same purport as the Ohio case. On examination of the books on maritime law, on which these authorities rely, we find that the requirement of a written policy, though almost if not quite universal in maritime codes, is always by positive regulation ; and we find those regulations as far back as the subject of insurance is discussed or legislated upon. But whilst this is true, the considerations referred to by Judge Comstock, in the New York case last cited, are unanswerable. And the numerous cases in which a parol contract for a policy of insurance has been sustained are conclusive that there is nothing in the nature of the subject which renders it insusceptible of a parol agreement. And whilst a statutory regulation requiring a writing may be very expedient, in the absence of such a statute it cannot be held that a parol insurance is void.

It is contended, however, that the present case is subject to, and is to be governed by, certain express relations, which take it out of the general rule of the common law. The charter of the defendant company is referred to as restraining its power to enter into contracts of insurance in any other manner than by a written instrument. The company was formed in 1856, under the General Fire Insurance Companies Act of New York, passed in 1853, by which any association proposing to be organized under its provisions was required to file a copy of its charter in the office of the comptroller, and therein " set forth the name of the company, the place where its business should be located, the mode and manner in which the corporate powers granted by the act are to be exercised, &c." The company in this case filed such a charter, by the first article of which it was declared as follows : —

" The name of this company shall be the Relief Fire Insurance Company. The principal office for the transaction of its business shall be in the city of New York. Its purpose and business shall be by instrument, under seal or otherwise, to make insurance on

dwelling-houses, stores, and all other kinds of buildings, and upon household furniture and other property, against loss or damage by fire," &c.

By art. 5 it is declared that "the president or other officer appointed by the board of directors, for the purposes aforesaid, shall be authorized, in the name and behalf of the company, and in and by policy of insurance in writing to be signed by the president or other officer and secretary of the company, to make contracts of insurance with any person or persons, or body politic or corporate, against loss or damage by fire," &c. It is insisted that these articles are the company's law of existence, and that it would be *ultra vires* for it to make parol contracts of insurance. But it is manifest that the article last quoted is merely affirmative as to what may be done by the officers in the usual course, and contains no negative clause that an insurance made otherwise than by a written policy shall be void. And the clause in the first article, which declares that the company's "purpose and business shall be by instrument, under seal or otherwise, to make insurance," admits of a wider construction than that contended for. The words, "by instrument, under seal or otherwise," may as well mean "by sealed instrument or otherwise," as to mean "by instrument, either under seal or otherwise." The substantial power given by law to an association organized under it, is to make insurance against loss and damage by fire. The mode and form in which it shall make its contracts is not prescribed as an essential part of its being or mode of action. The expressions referred to are not of that character. They indicate, in language chosen by the company itself, and not by the legislature, the ordinary mode of conducting its business. After having, by its officers and agents, made a parol contract of insurance, and induced the insured party, acting in good faith, to rely on its engagements, it cannot be permitted to shelter itself behind any such ambiguous expressions in its charter, and claim to have a special statute of frauds for its own benefit. Substantially similar provisions to those now relied on were contained in the charter of the Firemen's Insurance Company in the case of Sanborn; but the court held that they were merely enabling in their charac-

ter, and not restrictive of the general power to effect contracts in any lawful and convenient mode. " We cannot think," said Judge Hoar, delivering the opinion of the court, " that a pro-- vision in the charter of an insurance company, authorizing con- tracts authenticated by the signature of a particular officer, and without any words of restriction, should generally be construed to limit the powers of the company, and to prevent them from making contracts within the ordinary scope of their chartered powers. On the contrary, the phraseology of those statutes respecting the execution of policies should be regarded as con- sisting simply of enabling words, not restraining the power which they confer to make contracts, of which the policies are the evidence." 16 Gray, 454.

Substantially the same views were expressed by the Court of Appeals of New York, in the case of *First Baptist Church* v. *Brooklyn Fire Insurance Co.*, 19 N. Y. 309–311.

But, besides all this, it is not perceived how the insured can be affected by these verbal minutiæ in the charter of the com- pany, without their being brought to his knowledge. The char- ter is a document on file in the office of the comptroller of New York, in the city of Albany. A person dealing with the com- pany, in Massachusetts cannot be expected to know its precise terms. It holds itself out to be an insurance company, author- ized to take risks against losses by fire, and by its officers and agents assumes to act in the same manner as other insurance companies do. However it may expose itself to be questioned by the government which created it, for exceeding the precise limits of the powers granted, it is estopped from eluding its obligations, incurred towards those who, in ignorance of these limits, contract with it in good faith, and upon the basis of the powers assumed by its recognized agents to exist.

It is contended, however, that there is a statute of Massachu- setts which, in effect, requires that all contracts of insurance shall be in writing ; namely, c. 196, sect. 1, of the acts of Massachusetts for 1864, which provides as follows : —

"In all insurance against loss by fire hereafter made by compa- nies chartered or doing business in this Commonwealth, the condi- tions of insurance shall be stated in the body of the policy ; and neither the application of the insured nor the by-laws of the com-

pany shall be considered as a warranty, or a part of the contract, except so far as they are incorporated in full into the policy, and appear on its face before the signatures of its officers."

It is evident that the object of this statute was, not to prohibit parol contracts of insurance, but to prohibit the practice of referring to a set of conditions not contained and set out in the policy, but embodied in some other paper or document. The statute was passed for the benefit of the insured, in order that they might not be entrapped by conditions to which their attention might never be called, and which they might inadvertently overlook and disregard, if they were not embraced in their policies. It applies in terms only to policies, that is, to written contracts of insurance; and has no application whatever to parol insurances. It does not prohibit them, nor affect them in any way.

Other points were taken by the plaintiff in error, to the effect that there was no evidence that the agent ever had authority to make other than a written contract, or that a completed oral contract was ever made as stated in the declaration, or that the insurance company ever authorized its agent to delegate to another the power to make insurance. An examination of the bill of exceptions shows that it does not contain all the evidence which was adduced. Whether the omitted portions would furnish any light on these points, we are unable to say. But we think that the evidence which is spread upon the record was sufficient to go to the jury, and we see no error in the charge of the court in this behalf. The agent who acted in this case had been accredited as the general agent of the company in the Commonwealth of Massachusetts from the beginning of 1870, and had, during all that time, been transacting the business of the company as such agent in the city of Boston. His mode of doing business was not materially different from that of other agents or companies. He had, during all that period, been assisted by a clerk or clerks, who attended to the business in his absence, — which the company must have known. These and other facts, sufficiently shown by the evidence, entirely justify the charge of the court, and the finding of the jury is conclusive.

We see no error in the record.    *Judgment affirmed.*