## KIMBALL *v.* LION INS. CO.

### SAME *v.* MERIDEN FIRE INS. CO.

*(Circuit Court, D. Rhode Island.   August 23, 1883 )*

**FIRE INSURANCE—EVIDENCE OF CONTRACT.**

An oral agreement by an insurance agent to take $5,000 upon mill property is not a completed contract of insurance, if there was to be an apportionment between real and personal estate, and none had been made when the property was destroyed by fire.

Whether a contract for insurance made at a quarter before 6 o'clock in the evening dates back to noon of the same day, is not decided.

v.17,no.8—40

At Law.

*C. P. Robinson,* for plaintiff.

*Miner & Roelker,* for defendants.

Before LOWELL and COLT, JJ.

LOWELL, J. These cases were heard together, and raise interesting questions in the law of insurance.

The plaintiff was the owner of a mill at Burrillville, Rhode Island, to which he had made an addition, and happening to be in the office of his insurance agent at Providence, in the afternoon of October 14, 1881, he asked the agent, Mr. Shove, to procure him insurance for $5,000 in addition to $37,000, which he already had on his mill, machinery, and stock. The agent had taken as much of the risk as he thought advisable in the companies which he represented, and his son, by his direction, applied by telephone to another insurance agent in Providence, Mr. Spencer, who agreed to take the $5,000 in the defendant companies, one-half in each. Nothing was said about the rate of premium, the time for which the policy was to run, or the apportionment between the old and the new mill, or between buildings, machinery, and stock. Upon the acceptance by Spencer, the plaintiff's agent said that he would call in the morning with a form. Spencer already had insurance on the plaintiff's property in another company, and he proceeded to enter in his book the $5,000, divided equally between the two defendant companies, and apportioned between buildings, machinery, and stock in the same proportion as in the former policy, and at the same rate of premium. This occurred at a quarter before 6 o'clock in the evening, and in the mean time the premises had caught fire about noon of the same day, and were by this time much damaged. The existence of the fire was not known to any of the persons concerned in the negotiation. The evidence tended to show a custom to make all risks in policies against fire begin and end at noon, which is thought to be convenient for both parties, but more particularly for the underwriters, and they insist upon following the practice. If, therefore, a person procuring insurance is unwilling to date his policy from the noon next after his application, he may have it dated back to the noon next before; in this case it would be 12 o'clock of the day of the fire. The plaintiff contends that by virtue of this practice he had the promise of a policy from that hour.

We are of opinion that there was no completed contract for insurance at all. There is evidence enough that Spencer, the defendant's agent, was ready to grant a definite insurance, and if the entries in his book corresponded to any agreement of the parties, there would be no difficulty; but, in point of fact, not a word had been exchanged between the two brokers as to the rate of premium, or as to the apportionment of the risk, and it is clear that there was to be some apportionment; that is, the whole sum was not wanted for the protection of the mill itself, but some part for machinery, and some part for stock.

We may grant that the time would be understood to be one year, if nothing was said to the contrary. It was argued, but not proved, that the rate of premium was fixed by some usage or previous course of dealing. But there is nothing to show that the apportionment made by Spencer, on the basis of a former policy, would have been satisfactory to Shove, and to the plaintiff, if that were enough. On the contrary, we are disposed to believe that the new part of the mill and its contents were in their minds as being the property needing insurance, and that they would have changed the provisional apportionment very materially.

We are also strongly inclined to think that Shove understood that the risk was to begin on the following day, and that when he spoke of bringing to Spencer a "form" in the morning he meant a memorandum or scheme of the exact distribution of the risk. As to the mere form of policy there could be no occasion to bring one, that we can see. At any rate, we cannot find a completed contract in the few words which passed between the parties, and we could not fairly and justly apportion the loss and the salvage between real and personal estate, and between this company and others, upon so slight a foundation of contract as we have before us.

Judgment for the defendants.