KLEIS *v.* NIAGARA FIRE INSURANCE CO.

117  469
j151  ²446

1. INSURANCE—AGREEMENT TO INSURE—AGENT'S PERSONAL CONTRACT.

A promise by an agent of several insurance companies, upon the receipt of a premium, to issue a policy of insurance at a future day, and his statement that the property would be insured in the meantime, without designating any particular company, do not constitute an oral contract to insure, binding upon the company which subsequently issues a written policy of insurance on the risk, but is at most the personal contract of the agent.

2. SAME—VARIATION OF POLICY BY PAROL.

One who accepts a policy of insurance issued to him upon his written application cannot ignore the writings, and sue upon a preliminary parol agreement to issue a policy of different form; his remedy, in case of fraud or mistake, being the reformation of the contract in equity.

Error to Allegan; Padgham, J.   Submitted April 8, 1898.   Decided July 12, 1898.

*Assumpsit* by Maggie Kleis against the Niagara Fire Insurance Company upon an alleged contract of insurance.   From a judgment for plaintiff, defendant brings error.   Reversed.

*Howard, Roos & Howard*, for appellant.

*Gerrit J. Diekema*, for appellee.

HOOKER, J.   The undisputed evidence in this record shows that the plaintiff's husband, acting upon her behalf, made application to Walsh, the local agent of the defendant, for insurance upon the plaintiff's building, upon a Saturday.   He desired insurance to the amount of $1,000. The rate was fixed, and he paid Walsh $10, taking his receipt, reading as follows:

"HOLLAND, MICH., May 25, 1895.
"Received of M. W. Kleis ten dollars, insurance money for three years on house and household goods.
"W. C. WALSH."

Walsh promised to draw the policy upon the following Monday, and did so, and two or three days later the policy was delivered to the plaintiff's husband, who called for it according to agreement. In September following, the property was burned, and this action is brought to recover the insurance. The policy contains a clause, to be found in all Michigan standard policies, to the effect that the—

"Entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the insured now has, or shall hereafter make or procure, any other contract of insurance. * * * No officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy, except such as, by the terms of this policy, may be the subject of agreement indorséd hereon or added hereto; and, as to such provisions and conditions, no officer, agent, or representative shall have such power, or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached hereto; nor shall any privilege or permission affecting the insurance under this policy exist, or be claimed by the insured, unless so written or attached."

As a fact, the plaintiff had, at the time the defendant's policy was purchased, insurance in another company, to the amount of $400, $300 of which was upon the dwelling, and $100 on the contents; and afterwards she procured $500 more upon the dwelling, and $100 on the furniture. At the time of the fire, then, she had in the three companies $1,550 upon the dwelling, and $450 upon the furniture. The testimony shows that the plaintiff's husband considered the dwelling worth $1,000. Other testimony indicates that it could have been replaced for $500. The plaintiff's husband testified that, at the time of his application for the insurance in the defendant company, he stated to the agent that there was other insurance upon the property, procured from one Marsh, and that, as soon as

he obtained sufficient money, he intended to take out more insurance upon the premises; and that Walsh told him not to go to Marsh for such prospective insurance, but to come to him (Walsh) for it; but that he afterwards procured it from Marsh. The plaintiff also testified that at the time she signed the application, which was some days later, she asked Mr. Walsh: "'If we wanted to insure higher, must I let him know?' and he told me, 'No;' I could insure in any policy I liked, but he would like to insure me." This was after the policy was received. This testimony is disputed, but, for the purposes of the case, must be assumed to be true.

The following quotation from the brief of counsel for the plaintiff will show his understanding of the issue which was made:

"The first point relied upon by the appellant is that there can be no recovery under the declaration in the case. This point was raised by the defendant early in the trial of the case in the court below, and, we think, was properly overruled by the circuit judge. The declaration contains but one count, and the plaintiff relies entirely upon a verbal contract made with the defendant on the 25th day of May, A. D. 1895. On that day, all the terms and conditions of insurance were agreed upon between the parties, and the money was paid by the plaintiff, and a receipt taken therefor; and the agent of the defendant then stated that he would draw up the policy on the next Monday, and that, if the property burned before said Monday, it would be considered insured. There was no written application, and the whole contract was a verbal one. If the plaintiff had declared upon a written contract, and had made the policy issued the basis of her action, then it is true that if, either through mistake or fraud, the written contract did not represent the intentions of the parties, the injured party must have come into a court of equity to have the contract reformed before she could base her action upon it."

He seems to concede that he is not attempting to recover upon the policy, but upon the oral contract for a policy; and the declaration alleges that the policy delivered was not in conformity to the agreement for insurance, and that—

"By reason of the defendant not performing its said contract and agreement for insurance so made with the plaintiff, as aforesaid, and by not executing and delivering to the plaintiff a policy of insurance therein and thereby insuring the plaintiff against loss or damage by fire upon said property, according to the terms of said contract and agreement for insurance so made as aforesaid, and by fraudulently inserting in said pretended policy said clause relating to other contracts of insurance upon the property covered in whole or in part by said policy of insurance delivered by defendant to plaintiff, she is injured and has sustained damage to the amount of one thousand (1,000) dollars."

We are justified in saying, therefore, that the plaintiff's brief shows that recovery was sought upon an alleged oral contract, made by the defendant, to insure her building and its contents, and to issue a policy to her in conformity to their talk. The evidence in the case shows conclusively that the defendant was not designated as the company to furnish this insurance and issue the policy. Plaintiff's husband, who is alleged to have made the oral contract, testified that he met Mr. Walsh, and told him that he wanted to insure some property; and Walsh said it was all right, and asked how much, and Kleis told him; and then Walsh asked him a few questions, and then said, "Well, it is all right," but that he was too tired to draw up the policy that night, so he gave him a receipt for the money, reading as follows:

"HOLLAND, MICH., May 25, 1895.
"Received of M. W. Kleis ten dollars, insurance money for three years on house and household goods.
                              "W. C. WALSH."

Walsh promised to draw the policy the first thing Monday morning, and told Kleis to call in any time the next week, and get it, and also said, "if it burns from now until Monday, we will call it insured." It appeared that Walsh was agent for several companies, and it is manifest that, had a fire occurred before Monday, it would be difficult for the court to find from this testimony that the

defendant was a party to the contract, any more than any one of a dozen other companies.   There was therefore, at the most, a contract with Walsh to insure.   *New Orleans Ins. Ass'n* v. *Boniel*, 20 Fla. 815; *Sheldon* v. *Insurance Co.*, 65 Wis. 438.   So far, then, there was no oral contract upon which this action can be maintained.   A few days later, the policy which was subsequently issued by the defendant company was received by the plaintiff; and, a week or two after that, she was required to sign an application, which she did.   This was the completion of a contract, evidence of which was contained in the two writings, viz., the application and policy, which merged all negotiations and agreements in the writing; and, under innumerable authorities, it is not subject to contradiction or variation by parol in an action brought upon it.   If the action is brought on the oral contract underlying it, a complete answer is that the negotiations were reduced to writing, and executed and accepted by the parties.   The plaintiff accepted the policy, and, after the property was destroyed by fire, she made claim under it; but, when the defense was set up that she had broken a condition of the policy, she brought her action, not upon the policy, but upon what the declaration alleges to be an oral contract for a policy, by which the defendant is said to have agreed to issue a policy of insurance which should not preclude other insurance without its assent; and this it is claimed was never done, although a policy did issue, and was accepted by the plaintiff.

The plaintiff cannot sustain this declaration by the record—*First*, because there never was a time prior to the delivery of the policy when it can be said that the defendant had any contract relations with the plaintiff; and, *second*, because the evidence conclusively shows that the parties reduced the result of their various interviews and negotiations to writing, and that the policy accepted and kept by the plaintiff, and the application held by the defendant, are the evidence of the contract.   We need go no further than our own Reports for a cloud of cases which

sustain the doctrine. See 1 Jac. & C. Dig. 882, 3 Jac. & C. Dig. 380, where the Michigan cases are collected.

If, as counsel contends, this policy was not in accord with the oral agreement, she might have had it reformed by applying to a court of equity on the ground of mistake, and rescinded, if not reformed, upon the ground of fraud, if there were fraud. But she has taken a different course. With her written contract outstanding, she seeks to ignore it, and recover upon a *contract for a contract*, and depends for success upon her ability to convince a jury that the written contract that she holds is not such a contract as the defendant agreed to make. Counsel does not cite a case in point, and except a *dictum* in the case of *O'Donnell* v. *Insurance Co.*, 73 Mich. 4, and *Connecticut Fire Ins. Co.* v. *Monroe Circuit Judge*, 77 Mich. 231 (18 Am. St. Rep. 398), and a count in a declaration which the court held to introduce a new cause of action in the latter case, produces no authority to sustain his position; while, in the case last cited, Mr. Justice MORSE states that a mistake or fraud in writing a policy cannot be corrected in a court of law. If the plaintiff is right in her contention, the same rule would apply when the property was misdescribed, or where in any respect the policy issued and accepted, or contract executed, did not conform to the oral negotiations preceding its issue. Equity has power to deal with these questions; but in an action at law, when it appears that the contract has been deliberately put in writing, and accepted, the writing is the contract. In *Gerrish* v. *Insurance Co.*, 55 N. H. 358, it is said:

" A policy is the usual evidence of a contract of insurance. It is not necessary, however, in order to enable the assured to maintain an action upon the contract. If issued, it is the best evidence of what the contract was, and parol evidence would not be admissible to contradict it; but when none is issued, the contract may be proved by any competent evidence."

In *New York Ice Co.* v. *Insurance Co.*, 23 N. Y. 357, the court held that the policy might be reformed. *Phœnix*

*Fire Ins. Co.* v. *Gurnee*, 1 Paige, 278 (19 Am. Dec. 431); *Phœnix Fire Ins. Co.* v. *Hoffheimer*, 46 Miss. 645; *Stout* v. *Insurance Co.*, 12 Iowa, 371 (79 Am. Dec. 539); *Longhurst* v. *Insurance Co.*, 19 Iowa, 364. In *Hammel* v. *Insurance Co.*, 50 Wis. 240, it was held that in an action for loss by fire, on a proper complaint and prayer, the equitable jurisdiction would permit reformation and enforcement of the policy. In *Collett* v. *Morrison*, 9 Hare, 162, 12 Eng. Law & Eq. 171, it was held that, when a life policy was drawn in a form differing from the terms of the agreement, equity would deal with the matter on the terms of the agreement. *Harris* v. *Insurance Co.*, 18 Ohio, 116 (51 Am. Dec. 448); *Holmes* v. *Insurance Co.*, 10 Metc. (Mass.) 215 (43 Am. Dec. 428). In *Mead* v. *Insurance Co.*, 64 N. Y. 453, it was held that "to justify a court of equity in changing the language of a written instrument sought to be reformed, in the absence of fraud, it must be established that both parties agreed to something different from what is expressed in the writing, and the proof should be so clear and convincing as to leave no room for doubt." That case involved the identity of the premises agreed to be insured. If the plaintiff's contention in the present case is correct, the plaintiff in that case should have disregarded the policy, gone into a court of law, and shown by parol that the policy did not conform to the oral arrangement, and recovered the loss under the guise of damages for the breach of the oral contract to issue a policy, on a bare preponderance of proof. See, also, *Van Tuyl* v. *Insurance Co.*, 55 N. Y. 657; *Bryce* v. *Insurance Co.*, Id. 240 (14 Am. Rep. 249); *National Fire Ins. Co.* v. *Crane*, 16 Md. 260 (77 Am. Dec. 289); *Tesson* v. *Insurance Co.*, 40 Mo. 33; *Hearne* v. *Insurance Co.*, 20 Wall. 488; *Snell* v. *Insurance Co.*, 98 U. S. 85.

The inference to be drawn from these cases is that, where there is fraud or mistake, equity may afford relief, but will do so cautiously, and will require clear proof of the fraud or mistake. They negative the idea that one

may reduce his oral agreement to writing, formally execute or accept and keep it, and at a later time ignore the solemn writing, and bring an action upon a preliminary agreement. This would be an innovation that would render written contracts no better than oral ones, and practically make them subject to variation and contradiction by parol, and, by indirection, evade one of the best and most uniformly settled rules of law, and render obsolete a branch of equity jurisdiction. This seems to be indicated by the opinion of Mr. Justice MORSE, hereinbefore quoted. Where an oral contract for insurance, complete in all essentials, has been made, and a policy promised under it is refused, we have no doubt that an action will lie for the breach; and possibly in some cases the measure of damages would be the loss; in others it might not. In *Dailey* v. *Accident Ass'n*, 102 Mich. 299 (26 L. R. A. 171), it is intimated that a recovery might be had upon an oral contract. But that was a case where the insured was killed before the policy reached him. He had not seen it, and had therefore no opportunity to accept or reject it. There was no written contract. There was an oral one; but, when the oral contract has merged in a writing executed and accepted by the complaining party, he must seek his remedy in equity if unwilling to abide by the writing. It follows that a recovery should not have been permitted upon the declaration.

Had this declaration counted upon the policy, and the defense been made that the other insurance forfeited the policy, it would have led to the question of waiver of the condition by the defendant.

As there could be no recovery under this declaration, the judgment is reversed.

The other Justices concurred.