[No. 9679.  *En Banc.*  April 9, 1912.]

OGLE LAKE SHINGLE COMPANY, *Respondent,* v. NATIONAL ,
LUMBER INSURANCE COMPANY, *Appellant.*[1]

INSURANCE—ORAL CONTRACT — REQUISITES — CERTAINTY. An oral
contract of fire insurance is incomplete and unenforceable for want
of certainty as to the parties, the risk insured against, and the
duration of the insurance, where it appears that a local agent, who
had arrangements with insurance agents in another city repre-
senting several companies to send them business on a percentage
basis, received an application for insurance on a shingle mill and
its machinery, on June 1, informed the insured that the insurance
would be effective that day, and wrote for the policies, that he re-
ceived a reply on June 4th, inclosing blank forms and asking how
the insurance was to be divided, promising the policies on receipt
of the information, that the local agent made the segregation and
mailed the forms on June 4th at 11 a. m., without knowing what
companies would be selected, that the mill burned the same after-
noon, before receipt of the required information, and that policies
were issued in two different companies the next day before receiv-
ing notice of the fire, the insured having been led to believe that
the term commenced June 1st, when he first applied for it, and this
not having been communicated to the agents, who dated the policies
June 5th.

DUNBAR, C. J., FULLERTON, GOSE, and CROW, JJ., dissent.

Appeal from a judgment of the superior court for King
county, Gilliam, J., entered January 20, 1911, upon the
verdict of a jury rendered in favor of the plaintiff, in an
action upon an oral contract of insurance. Reversed.

*Granger & Clarke,* for appellant.

*Troy & Sturdevant* and *A. J. Falknor,* for respondent, con-
tended, among other things, that the oral contract of insur-
ance was complete upon the insurer's consideration and ac-
ceptance of the proposal. 1 Beach, Law of Insurance, p.
470, § 482; 1 May, Insurance (4th ed.), p. 71, § 43; *Wald-
ron v. Home Mut. Ins. Co.,* 16 Wash. 193, 47 Pac. 425;
*Cooke v. Aetna Ins. Co.,* 7 Daly (N. Y.) 555; *Frecking v.*

[1]Reported in 122 Pac. 990.

*Germania Fire Ins. Co.* (Ind. App.), 81 N. E. 217; *Pino v. Merchants' Mut. Ins. Co.*, 19 La. Ann. 214, 92 Am. Dec. 529; *Brownfield v. Phoenix Ins. Co.*, 35 Mo. App. 54; *Angell v. Hartford Fire Ins. Co.*, 59 N. Y. 171, 17 Am. Rep. 322; *Audubon v. Excelsior Ins. Co.*, 27 N. Y. 216. A binding acceptance can be indicated by the mailing of a letter containing an unconditional acceptance. *Tayloe v. Merchants' Fire Ins. Co.*, 9 How. (U. S.) 390; *Triple Ling Mut. Indemnity Ass'n v. Williams*, 121 Ala. 138, 26 South. 19, 77 Am. St. 34; *Kilborn v. Prudential Ins. Co.*, 99 Minn. 176, 108 N. W. 861; *Busher v. New York Life Ins. Co.*, 72 N. H. 551, 58 Atl. 41; *Hallock v. Commercial Ins. Co.*, 26 N. J. L. 268; *Commercial Ins. Co. v. Hallock*, 27 N. J. L. 645, 72 Am. Dec. 379; *Waters v. Security Life & Annuity Co.*, 144 N. C. 663, 57 S. E. 437; *Dailey v. Preferred Masonic Mut. Acc. Ass'n*, 102 Mich. 289, 57 N. Y. 184, 26 L. R. A. 171. A binding acceptance of a counter proposition may likewise be made by depositing notice in the mail. *Eames v. Home Ins. Co.*, 94 U. S. 621; *Schultz v. Phoenix Ins. Co.*, 77 Fed. 375; *Easley v. New Zealand Ins. Co.*, 5 Idaho 593, 51 Pac. 418. Or by compliance by the applicant with a condition imposed by the insurers, with notice to them. *Hamilton v. Lycoming Mut. Ins. Co.*, 5 Pa. St. 339. It was not necessary that the general agent should again approve the application. *Born v. Home Ins. Co.*, 120 Iowa 299, 94 N. W. 849; *Carter v. Bankers' Life Ins. Co.*, 83 Neb. 810, 120 N. W. 455; *Home Ins. Co. v. Adler*, 77 Ala. 242. The terms were sufficiently agreed upon. *Cleveland Oil & Paint Mfg. Co. v. Norwich Union Fire Ins. Co.*, 34 Ore. 228, 55 Pac. 435; *Sproul v. Western Assur. Co.*, 33 Ore. 98, 54 Pac. 180; *Eureka Ins. Co. v. Robinson, Rea & Co.*, 56 Pa. St. 256, 94 Am. Dec. 65; *Mactier's Adm'rs v. Frith*, 6 Wend. (N. Y.) 103, 21 Am. Dec. 262. If a parol contract of insurance is made with an authorized agent of the company, without mentioning any date for the insurance to take effect, the risk commences immediately. *Potter v. Phoenix Ins. Co.*, 63 Fed. 382; *Palm v.*

*Medina County Mut. Fire Ins. Co.*, 20 Ohio 529; *Bennett v. Connecticut Fire Ins. Co.*, 11 Ohio Dec. 429. In negotiating the insurance, Carstens & Earles represented the National Lumber Insurance Company and the Des Moines Fire Insurance Company. 1 Cyc. 709; 1 May, Insurance (4th ed.), p. 71, § 43; *Ferguson v. Lumbermen's Ins. Co.*, 45 Wash. 209, 88 Pac. 128; *Ganser v. Fireman's Fund Ins. Co.*, 38 Minn. 74, 35 N. W. 584; *Thompson v. Germania Fire Ins. Co.*, 45 Wash. 482, 88 Pac. 941.

Morris, J.—Action to recover upon an alleged oral contract of insurance. The determinative facts are these: On June 1, 1909, representatives of the respondent called on J. B. Cutter, an insurance agent at Olympia, soliciting insurance. Cutter, not representing insurance companies carrying the character of risk represented in respondent's plant, had arrangements with Carstens & Earles, general insurance agent at Seattle representing several insurance companies, to send such business to it on a percentage basis. In accordance with this arrangement, Cutter, on the same day, wrote Carstens & Earles a letter, the material parts of which are:

"I am called upon to insure the Ogle Lake Shingle Co. . . . mill and machinery to the extent of $2,000, . . . Will you kindly issue policy for above mentioned shingle mill, covering mill and machinery to the amount of $2,000."

To this letter, Carstens & Earles replied on June 2:

"We are in receipt of your favor of the 1st inst., asking us to forward you insurance policies upon the mill of the Ogle Lake Shingle Co., in the sum of $2,000. Before we can do this we must know how you desire the insurance divided; that is, how much on the building and how much upon machinery. We enclose herewith one of our printed forms, and will ask you to please fill it out and forward to us, and we will then send you the policies."

On June 4, Cutter replied to this letter, filling out the blank upon his own responsibility, not having seen any offi-

cial of the shingle company. He divided the amount desired as follows: $300 on building, $500 on engine and boiler, $1,000 on machinery, and $200 on stock incident to the business. This letter was mailed at Olympia at 11:30 a. m. In the afternoon of the same day, and while Cutter's letter was en route to Seattle, the mill was totally destroyed by fire. Carstens & Earles received Cutter's letter the next morning, and the same day wrote two policies of $1,000 each, dividing the risk between appellant and the Des Moines Fire Insurance Company. The policies were dated June 5, and noted the insurance as commencing June 5, 1909, and expiring June 5, 1910. On the same day, it made out the agent's customary daily report, showing the placing of the insurance in these two companies. It was not notified of the loss of the mill until June 7. A number of errors are suggested by the appeal, but they are all embodied in the one contention of appellant that there was no contract upon which liability can be enforced.

It is now well established that contracts of insurance may rest in parol. It is as well established that an oral contract for insurance is not enforceable unless all the elements essential to a contract of insurance have in some manner been agreed upon.

"In other words, nothing can be left open for future negotiations with reference to the subject-matter, parties, rate of premium, amount, or duration of risk." 1 Cooley, Briefs on the Law of Insurance, p. 368.

See, also, Wood, Fire Insurance (2d ed.), § 5.

It will be admitted that the contract of insurance must have been complete at the time of the destruction of the mill on June 4, or there can be no recovery. If it lacked any of the required essentials, it was not complete. Among these essentials is certainty of parties, and the risk insured against, in neither one of which particulars was there any designation or certainty at the time of the fire. Had Carstens & Earles been an insurance company, or representing only the two

companies in which the policies were subsequently written, it might be held that there was a certainty as to the parties to the contract. It is admitted that it represented several other companies at the time of the fire. There is nothing in the correspondence nor in the testimony to indicate in what companies this insurance was to be placed. At the time the representatives of the shingle company called on Cutter to effect the insurance, he had no knowledge of the companies other than as the names appeared on the letter heads of Carstens & Earles and in the circulars sent to him. They evidently made some inquiry as to the companies to carry the risk, as Cutter says in his testimony: "I told them it would be placed in two good companies," but that he could not tell them in what companies. "I did not know exactly, so I left it all to their [Carstens & Earles] discretion in which companies to place it." Under these circumstances, no contract existed as to any one of the companies represented by Carstens & Earles. And the first essential of a contract is lacking in that there was no meeting of minds as to the parties to the contract. So far as we have been able to determine, all the authorities agree that, where an insurance agent represents several companies and there is no designation of the company to take the risk, there is no contract because of the failure of parties. *Hartford Fire Ins. Co. v. Trimble,* 117 Ky. 583, 78 S. W. 462; *Sheldon v. Hekla Fire Ins. Co.,* 65 Wis. 436, 27 N. W. 315; *New Orleans Ins. Ass'n v. Boniel,* 20 Fla. 815; *Kleis v. Niagara Fire Ins. Co.,* 117 Mich. 469, 76 N. W. 155; *Davis Lumber Co. v. Scottish Union & Nat. Ins. Co.,* 94 Wis. 472, 69 N. W. 156; *Michigan Pipe Co. v. Michigan Fire & Marine Ins. Co.,* 92 Mich. 482, 52 N. W. 1070, 20 L. R. A. 277.

The contract is lacking in another essential: There was no segregation or division of the risk insured against. Cutter's letter of June 1 requests a policy covering mill and machinery for $2,000, but he does not indicate how this risk is to be divided, how much on mill and how much on ma-

chinery.   Carstens & Earles therefore write him on June 2, inquiring how the policy is to be divided between mill and machinery, upon receipt of which information it promises to send the policies.   It will hardly be doubted that, in making this segregation, Cutter was the agent of respondent, and there could be no meeting of the minds upon this point until Carstens & Earles had received and accepted such segregation, which was not until after the fire.   Any proposal coming from Carstens & Earles to be accepted by Cutter acting for respondent would have been considered as accepted upon deposit of his letter at 11:30 a. m. of June 4 before the fire.   But this was not of such a character.   The proposal was not from Carstens & Earles requiring acceptance by Cutter.   But it was an application from Cutter, acting for respondent, to be accepted by Carstens & Earles as agent of the insurance companies.   The right of acceptance or rejection of the segregation or division of the risk as between the mill and machinery was with the insurance company.   Neither respondent nor Cutter as its agent could deprive the insurance company of that right and, until there was a receipt of Cutter's application and an acceptance of the apportionment therein indicated, by Carstens & Earles, there was no competent contract.   Cutter ends his letter of June 4 by saying:

"Trusting that you may select two good companies, and thanking you in advance for your assistance, I am, Very truly yours, J. B. Cutter."

Here we have an admission on the part of respondent's agent that at that time he had no knowledge of the companies in which the policies should be written.   If, however, this phase of the letter would permit us to say respondent had made Carstens & Earles its agent to select the two companies, it would still be true that the companies so selected would have the right to accept or reject the application as to the placing of the risk as between the mill and machinery, so that in either situation there could be no contract until

such right had been exercised, upon receipt of the application, which was on June 5, the day after the fire. It is clear from Cutter's letter of June 1 the whole sum of $2,000 was not wanted on either the mill or the machinery, but was to be apportioned in some way between the two. Until this was done, and the minds of the parties had so met, there could be no contract. *Kimball v. Lion Ins. Co.*, 17 Fed. 625; *Mattoon Mfg. Co. v. Oshkosh Mut. Fire Ins. Co.*, 69 Wis. 564, 35 N. W. 12; *Croft v. Hanover Fire Ins. Co.*, 40 W. Va. 508, 21 S. E. 854, 52 Am. St. 902; *Sandford v. Trust Fire Ins. Co.*, 11 Paige (N. Y.) 547; Wood, Fire Insurance, § 6; May, Fire Insurance (4th ed.), § 43f.

Even though we should hold, as contended by respondent, that the policies and the daily reports were admissible as evidence to show a selection of the companies to carry the risk, this would not permit respondent to recover until there had been a segregation of the risk between the two companies, and between the mill and machinery, which could not have been done until the receipt of Cutter's letter on June 5. It will be noted in this connection that Carstens & Earles, in its letter of June 2, notifies Cutter that, before it can comply with his request, it must know how the risk was to be divided between the mill and machinery.

It appears to us that the contract was not consummated because it is silent in a third essential—the duration of the risk. Cutter says he notified the representatives of respondent that the insurance would commence at noon on June 1. He does not indicate this in his letter to Carstens & Earles, nor is there anything in the correspondence between them to indicate when the risk was to commence. Respondent, from the conversation with Cutter, was led to believe it was insured from 12 m. June 1. Neither appellant nor its agent, Carstens & Earles, was, however, notified of this assertion on the part of Cutter; nor had they reason to believe it was the intention of the parties that the risk should commence before the policies were written. This is indicated by the dating of

the policies on June 5. If the policies were admissible to indicate the companies intended by Carstens & Earles before the fire, they would be equally competent to show an intent on the part of Carstens & Earles and the companies themselves not to be bound until June 5. It is plain there was no meeting of the minds as to the time when the risk was to commence or terminate, and the contract sought to be enforced was in this particular not a completed contract of insurance. Cooley, Briefs on the Law of Insurance, p. 392; *Michigan Pipe Co. v. Michigan Fire Ins. Co., supra; Todd v. German-American Ins. Co.,* 2 Ga. App. 789, 59 S. E. 94. For these reasons, the court below should have sustained appellant's motion for judgment.

The judgment is reversed, and the cause remanded with instructions to dismiss.

Mount, Chadwick, Ellis, and Parker, JJ., concur.

Dunbar, C. J. (dissenting)—I am compelled to dissent from the foregoing opinion. Accepting the statement of the majority, I think that, when an answer was made in response to the letter of Carstens & Earles, and the respondent had complied with its request by filling out the blanks which Carstens & Earles had sent for that purpose, apportioning the amount that was required on the building and the amount that was required upon the machinery, and when that was forwarded to Carstens & Earles, the minds of the two contracting parties had met on a definite proposition, and responsibility then attached. I am assuming, of course, that Carstens & Earles was the agent of the appellant, a proposition which is not disputed. The fact that Carstens & Earles did fill out the contracts in accordance with the conditions expressed in answer to its inquiries, conclusively shows that it so understood it. It is admitted in the majority opinion that any proposal coming from Carstens & Earles to be accepted by Cutter acting for respondent would have

been considered as accepted upon deposit of his letter at 11:30 a. m. of June 4 before the fire. But it is said that this was not of such a character; that the proposal was not from Carstens & Earles requiring acceptance by Cutter, but that it was an application by Cutter, acting for respondent, to be accepted by Carstens & Earles as agent of the insurance companies. Herein I think lies the error of the majority. It was not an application by Cutter acting for the respondent, but it was a response from Cutter, acting for the respondent, to an inquiry made by Carstens & Earles, the agent of appellant, upon a purely incidental matter not affecting the general contract. The terms had all been agreed upon—the amount of the insurance, the amount of the policy, and everything of that kind; and the information required to make the contract effective having been furnished by the respondent before the fire, was accepted upon the deposit of the letter in the post office, and the contract was complete.

It seems to me that an injustice has been done to respondent in this case, and that the judgment of the lower court should have been affirmed.

FULLERTON, GOSE, and CROW, JJ., concur with DUNBAR, C. J.