## GLOBE & RUTGERS FIRE INS. CO. et al. v. DRAPER.
### No. 7057.

Circuit Court of Appeals, Ninth Circuit. Sept. 6, 1933.

Graves, Kizer & Graves, of Spokane, Wash., for appellants.

Wentz & Bailey, of Colville, Wash., and Davis, Heil & Davis, of Spokane, Wash., for appellee.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

SAWTELLE, Circuit Judge.

This action was brought by appellee against the appellants to recover on an alleged oral contract of fire insurance, which contract was found by the court to be valid and binding, although not reduced to writing.

The action was originally commenced in the state court and upon petition of the defendants was removed to the federal court.

Upon stipulation of the parties, a jury trial was waived.

The contract sued upon was alleged and found by the court to have been executed and effective as of June 10, 1930. The property therein covered, consisting of a quantity of lumber owned by appellee, was destroyed by fire on August 10, 1930. Upon denial of liability by the insurance companies, appellee commenced and successfully prosecuted this action to recover the sum of $10,000.

From the findings of fact it appears that, on June 10, 1930, the copartnership of Hahn & Daly, of Spokane, Wash., the duly authorized agents of the appellants, entered into an oral contract of insurance with appellee, whereby Hahn & Daly agreed to issue to appellee policy No. 142430 of the appellant Globe & Rutgers Fire Insurance Company, in the amount of $10,000, covering certain lumber then in a lumber yard owned by appellee at Colville, Wash.; that the policy was to cover a period of one year, commencing on June 10, 1930; that pursuant to said oral agreement Hahn & Daly laid aside policy No.

142430 in their office and attached thereto a notation that the policy was to be issued to appellee, which notation was described by Hahn & Daly to appellee as a binder, and that Hahn & Daly assured appellee that the lumber for which the insurance was requested was as fully covered as if the policy had been completely written out and signed by them as agents.

The court also made the following finding, relating to the power and authority of Hahn & Daly to represent the appellants: "At all times herein mentioned defendant Globe Underwriters Agency was engaged in the business of writing and issuing policies of insurance against loss or damage by fire for the defendant Globe & Rutgers Fire Insurance Company and was duly authorized by said Globe & Rutgers Fire Insurance Company to write and issue such insurance and to appoint agents in various parts of the United States for the purpose of carrying on said business; that pursuant to said business and said authority, said defendant Globe Underwriters Agency prior to January 5, 1928, appointed Edward Brown & Sons, of San Francisco, California, its Pacific Coast General Agents, which General Agents, pursuant to authority given them by the Globe Underwriters Agency, on the 5th day of January, 1928, in writing, appointed I. Lloyd Hahn and O. R. Daly, a copartnership doing business under the firm name and style of Hahn & Daly, of Spokane, Washington, agents of the defendant Globe Underwriters Agency of Globe & Rutgers Fire Insurance Company, with full power and authority to receive proposals for insurance against loss or damage by fire in Spokane, Washington, and vicinity, to sign and deliver policies to applicants and collect and forward the premiums on the same; and furnish said Hahn & Daly fire insurance policies of the defendant Globe & Rutgers Fire Insurance Company, numbered consecutively in the standard form required under the laws of the State of Washington, signed by its authorized officials so that the same required no further signature when issued other than the contrasignature of said agent Hahn & Daly."

It further appears from the record that lumbermen generally increase the amount of their insurance at the beginning of the cutting and dry season of the year. With that knowledge in mind, Mr. Hahn, of the firm of Hahn & Daly, approached appellee, on June 10, 1930, and asked him if he needed any insurance. Appellee was then carrying about $45,000 insurance on his stock, most of which was written through Hahn & Daly, who represented several companies besides the appellants. Appellee requested Mr. Hahn to increase the amount of insurance to $75,000. Mr. Hahn testified that thereupon: "I telephoned my office in Spokane and told them to check our records and place insurance so that it brought the total insurance on the lumber yard up to $75,000. I returned to Spokane the same evening of June 10, and when I arrived at my office in the morning I found that there was $10,000 of insurance that had not been accepted by the companies which we had bound it in, and we had to replace that amount. It was necessary in order to bring the total insurance up to $75,000 that $10,000 more be placed, and I requested my office assistant to get Dan Weaver, who is branch manager in Spokane for Edward Brown & Sons, on the telephone; his office is in Spokane; my assistant called me to the telephone and told me Mr. Weaver was on the phone, and I asked him if he would accept the $10,000 on the Draper lumber yard, and he asked me the rate, which I told him, and the location of the lumber to be covered, and he said he would take it. Companies in underwriting govern the risk by the rate as to whether they will accept it. The question of location usually governs the rate. The property to be covered by the insurance was the lumber in the lumber yard of Draper. I told Dan Weaver that I wanted to place $10,000 for Globe & Rutgers; I told him the rate was $2.25. That rate was fixed as the rate on the Draper lumber yard by the Washington Rating and Surveying Bureau. When I talked with Mr. Draper in Colville about the increased insurance we discussed rates, and I told him he could get a reduction in rate if he would move two or three piles of lumber. The rate at that time was $2.25 and if he would move two or three piles of lumber his rate would be reduced about 45¢; the moving of the lumber piles would mean giving more clear space between the building and the lumber, and would entitle him to the reduced rate. * * * After my telephone conversation with Mr. Weaver, I told my office assistant that Weaver had accepted the $10,000 insurance, and my assistant did what we call 'pulled a policy' out and put the notation on it that $10,000 insurance was bound in Globe & Rutgers. * * * After the conversation with Mr. Draper in Colville in June, when he directed the increase of insurance, I didn't see him again until July 3 of that year. I asked him if he had moved the lumber and he said 'no,' and he asked me what companies it was bound in and I told him, among others, the Globe & Rutgers. I probably gave him the exact

amount in each, except perhaps in the Rochester, because that was odd numbered dollars and cents; I told him I had bound $10,000 with Globe & Rutgers Fire Insurance Company. * * * When I talked with Mr. Draper at Colville about the additional insurance nothing was said about the length of time the policies were to run. We charged the premium on those policies to Mr. Draper for a one-year period of time at a rate of $2.-25. This policy was not written because we were waiting for a re-rate on the lumber yard, and we expected that re-rate would be made as soon as the lumber was moved, which would give him the clear space needed. I told Mr. Draper that as soon as the lumber was moved we would notify the rating office and a new rate would take from the date of notification. When I saw Mr. Draper in Colville on July 3, I asked him when he was going to move the lumber so we could issue the policy, and he said he was still expecting orders to ship the lumber out any day. We didn't want to issue the policy and mail up the endorsements afterwards; we wanted to clean up the transaction at the time when the policy was issued."

Appellee testified that: "When I talked to Mr. Hahn about the increase in insurance nothing was said as to how long the policies were to run; the policies had always run for a year. It is rather a common thing in lumber policies to cancel them from time to time, because we have more lumber one year than others, and during the dry season we carry more insurance; as we sell the lumber and reduce the stock the amount of insurance is also reduced."

The appellants rely upon four specifications of error, which in turn involve three propositions:

(1) The oral contract sued on was not sufficiently definite and certain to be enforceable.

(2) Hahn had no power to enter into the oral contract in suit, which, under the circumstances of the case, was contrary to the public policy of the state of Washington.

(3) In any event, the judgment against the appellant agency must be reversed, because neither the evidence nor the findings connect it with the contract on which recovery was awarded.

■ Appellants admit that "a valid oral contract of insurance may be made in the State of Washington," but attack the validity of the contract in suit, first, on the ground "that it is wanting in the certainty and definiteness required in contracts of that character, espe-

cially that it neither fixed the duration of the contract of insurance nor the amount of the premium to be paid." Appellants concede, however, that it is not essential to an oral contract of insurance that every detail should be expressly agreed on, but that "an implied agreement concerning essentials is as good as an express agreement." This rule is stated in Cooley's Briefs on Insurance, Vol. 1 (2d Ed.) pp. 535, 536, as follows:

"Though it is regarded essential that all the elements of the contract be agreed upon, it is not necessary that this be done expressly. In Concordia Fire Ins. Co. v. Heffron, 84 Ill. App. 610, it was held that an oral contract of insurance will sustain an action, though no express agreement is made as to the amount of premium to be paid or the duration of the policy, if the intention of the parties to the contract in these particulars can be gathered from the circumstances of the case. Similarly it was said in Kor v. American Eagle Fire Ins. Co., 104 Neb. 610, 178 N. W. 182, that, though no express agreement was reached as to the duration of the risk, a parol contract of insurance will not be invalidated for uncertainty in that particular, if the parties' intention as to its duration can be gathered from the facts and circumstances in evidence. So it is held in Cleveland Oil & Paint Mfg. Co. v. Norwich Union Fire Ins. Co., 34 Or. 228, 55 P. 435, that a parol agreement of insurance, not specifying the premium to be paid, is a contract of insurance at the customary rates.

"In King v. Cox, 63 Ark. 204, 37 S. W. 877, an oral contract was regarded as binding, though the premium was not paid at the time of its consummation, if credit was given or it appeared from the circumstances and the situation of the parties that payment at the time was not exacted."

Without setting forth the evidence in further detail, we hold that the attendant circumstances and the course of dealing between the parties rendered the oral contract sufficiently definite both as to the duration and the rate of premium.

We advert next to the question of whether or not Hahn had the authority to make the oral contract in question.

■ As we have seen, the appellants concede that a valid oral contract may be made in the state of Washington. Indeed, the decisions of the Supreme Court of that commonwealth leave the general proposition beyond the peradventure of a doubt. Kidder v. Hartford Acc. & Ind. Co., 126 Wash. 478, 482, 218 P.

220, 222; Ogle Lake Shingle Co. v. Nat. Lumber Ins. Co., 68 Wash. 185, 188, 122 P. 990. See also, National Liberty Ins. Co. v. Milligan (C. C. A. 9) 10 F.(2d) 483, 485. All three of the foregoing cases were decided since the Insurance Code of Washington, as such, was enacted, in 1911. See the Kidder decision, supra, at page 480. The Ogle Lake Case, however, involved an alleged oral contract entered into before the Code was enacted.

The holding of the Washington Supreme Court accords with general law. 14 R. C. L., § 55, pp. 880, 881; 32 C. J. 1113–15, § 209; 69 A. L. R. 559–574, note, citing the Kidder Case, supra.

The appellants, however, assert that there is no evidence that Hahn had either express or implied authority to make an oral contract "unlimited as to duration." As we have seen, the lower court found that the policy was to be written for a period of one year from June 10, 1930, and we have also seen that there was evidence to support such a finding. Therefore there is no support for the appellants' claim that the oral contract of insurance was "unlimited as to duration."

■ As to Hahn's authority to make the contract in question, it will be recalled that, upon his return to his Spokane office after his conversation with the appellee, Hahn telephoned to Dan Weaver, the Spokane branch manager of Edward Brown & Sons, of San Francisco, and informed him of the conversation with the appellee. Weaver "said he would take it." In his brief, the appellee states that: "The record of the trial [reporter's transcript] shows that counsel for appellants stated in open court the following: 'We will admit that Edward Brown & Sons was their Pacific Coast agents, and what they did bound the company in that respect.'" Since we do not have the reporter's transcript before us, we cannot rely upon the foregoing statement as to the authority of the Brown firm; but both the oral and documentary evidence that we do have before us establishes conclusively that Edward Brown & Sons was the "Pacific Coast General Agent[s]" of the appellants.

■ It is undisputed that Weaver was the insurance company's "special representative," or the Brown firm's "branch manager," "special manager," or "general agent" at Spokane, and that "he was just the same as San Francisco [Edward Brown & Sons] transferred" to Spokane.

Therefore, even if it be argumentatively conceded that Hahn lacked authority to make an oral contract of insurance binding the appellants, the "acceptance" or ratification of the contract by Weaver removes all doubt as to that point. We believe, however, that the facts show that Hahn himself had the power to bind the appellants in an oral contract of insurance, for it is undisputed that he was the appellants' "agent."

It next becomes necessary to inquire into the extent, if any, to which an agent can bind an insurance company on oral contract.

Here, again, the general law is contrary to the appellants' contentions. In Relief Fire Insurance Co., etc., v. Shaw, 94 U. S. 574, 577, 579, 24 L. Ed. 291, both the company's charter and a statute of Massachusetts were invoked as denying the agent such power. A few excerpts from that decision will indicate how Mr. Justice Bradley disposed of both the asserted obstacles:

"The principal question in this case is, whether a parol contract of insurance, made on behalf of the plaintiff in error by its agent in the city of Boston, was valid.

"That a contract of insurance can be made by parol, unless prohibited by statute, or other positive regulation, has been too often decided to leave it an open question. That it is not usually made in this way is no evidence that it cannot be so made. * * *

"After having, by its officers and agents, made a parol contract of insurance, and induced the insured party, acting in good faith, to rely on its engagements, it cannot be permitted to shelter itself behind any such ambiguous expressions in its charter, and claim to have a special statute of frauds for its own benefit. * * *

"It is evident that the object of this statute was, not to prohibit parol contracts of insurance, but to prohibit the practice of referring to a set of conditions not contained and set out in the policy, but embodied in some other paper or document. The statute was passed for the benefit of the insured, in order that they might not be entrapped by conditions to which their attention might never be called, and which they might inadvertently overlook and disregard, if they were not embraced in their policies. It applies in terms only to policies, that is, to written contracts of insurance; and has no application whatever to parol insurances. It does not prohibit them, nor affect them in any way."

In 14 R. C. L., § 56, page 881, the rule is thus stated: "Notwithstanding some authority to the contrary, it is generally held that an agent with power to make and issue poli-

cies may agree orally for temporary insurance."

And in 32 C. J. 1115–1116, § 211, we find similar language: "Notwithstanding specific provisions in the articles or by-laws of the company as to how contracts of insurance shall be made, an officer, such as secretary or manager, may have implied authority to bind the company by an oral agreement with reference to insurance. The company is bound by a parol contract of insurance entered into by an agent authorized to make contracts of insurance, such as an agent authorized to issue policies, or a general agent, or a special agent duly authorized by a general agent. ⁕ ⁕ ⁕"

█ But the appellants insist that "The Insurance Code of Washington requires policies of fire insurance to be in writing, and to specify duration of risk and amount of premium." In support of this contention, the appellants cite Rem. Rev. Stat. §§ 7152 and 7155. Section 7152 provides as follows: "On and after January 1, 1912, no fire insurance company shall issue any fire insurance policy covering on property or interest therein in this state other than on form known as the New York Standard as now or may be hereafter constituted, except as follows. ⁕ ⁕ ⁕"

As the appellants observe, "The exceptions stated are not germane to any condition here present."

The text of section 7155 is as follows: "Every fire insurance policy must state on its face the amount and the rate of the premium."

Neither sections 7152 nor 7155 sustains the proposition put forward by the appellants.

As was said by the Supreme Court in the Relief Fire Insurance Case, supra, such a statute "applies in terms only to policies, that is, to written contracts of insurance; and has no application whatever to parol insurances." See, also, the Milligan Case, supra, at pages 484, 485 of 10 F.(2d), and 69 A. L. R. 563, 564.

We are aware that in the Milligan Case, supra, this court used the following language: "The authority of the agent, based on this practice, is limited to protection for the few days reasonable to be allowed for transmission of the application and receipt of advices as to the pleasure of the insurer."

The Milligan Case, however, is easily distinguishable from the case at bar. There this court was considering an oral contract of insurance that involved the apparent authority of the local agent, and held that the policy was in effect between the date of the oral contract and the date on which the application was submitted to the general agent of the insurance company. In the instant case, there is no question of the apparent authority of the local agent at Spokane to make the contract, for, as we have seen, he had actual authority to do so. Furthermore, there was an acceptance of the application by the Spokane branch manager of the company's general agent at San Francisco.

It will be observed that the two sections quoted above contain no negative provisions, denouncing oral contracts of insurance. In 14 R. C. L. 881, § 55, the editors say: "A statute, or the by-laws of an insurer, containing affirmative words as to the manner of executing insurance contracts, but containing no negative provisions, do not preclude an oral contract of insurance."

In the Kidder Case, supra, the Supreme Court of Washington observed: "As hereinbefore stated, we find in the Insurance Code no prohibition against oral contracts of accident insurance."

The Kidder decision also is authority for the statement that the rule for fire insurance and accident insurance should be the same.

In view of the language of the sections quoted above, and keeping in mind the decisions of the Supreme Court of Washington, we hold that the oral contract of insurance that we are now considering violated no statute of the state of Washington. Indeed, the appellants by implication concede as much when they say, in their brief, "Where the violation of the letter of a statute is not involved, there is no hard and fast rule for determining whether a contract is or is not contrary to public policy."

█ But the appellant argues that "it is contrary to the policy of the law, in jurisdictions where an Insurance Code like that of Washington is in effect, to permit an agent to make an oral contract of insurance which is to continue for an extended or unlimited period."

The appellants quote in their brief a number of sections from the Insurance Code of Washington, as tending to establish that an oral contract of insurance such as the one now before us is contrary to public policy. Without discussing the provisions of the Code in detail, we will confine ourselves to stating that they are not sufficient to establish the appellant's contention.

There are several considerations that lead us to this conclusion.

In the first place, as we have seen, an oral

contract of insurance is sanctioned by the general law. See the Relief Fire Insurance Case, supra. In that case, it was clear that Mr. Justice Bradley was basing his opinion upon the common law; for the learned jurist quoted with approval from two decisions in which the common law was cited as authority for the principle in question: Sanborn v. Fireman's Insurance Co., 16 Gray (Mass.) 448, 77 Am. Dec. 419, and The Trustees of the First Baptist Church v. Brooklyn Fire Insurance Co., 19 N. Y. 305. Indeed, on page 576 of 94 U. S., Mr. Justice Bradley, in this connection, speaks of "the general rule of the common law."

The courts are reluctant to construe statutes in derogation of the common law. In Texas & Pacific R. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 436, 437, 27 S. Ct. 350, 354, 51 L. Ed. 553, 9 Ann. Cas. 1075, the court said: "In testing the correctness of this proposition we concede that we must be guided by the principle that repeals by implication are not favored, and, indeed, that a statute will not be construed as taking away a common-law right existing at the date of its enactment, unless that result is imperatively required; that is to say, unless it be found that the pre-existing right is so repugnant to the statute that the survival of such right would in effect deprive the subsequent statute of its efficacy; in other words, render its provisions nugatory."

The Supreme Court of Washington is in accord with the view expressed above. In Irwin v. Rogers, 91 Wash. 284, 287, 157 P. 690, 692, L. R. A. 1916E, 1130, the court said: "It is a sound rule that a statute will not be construed in derogation of the common law unless the Legislature has clearly expressed such an intention."

Irwin v. Rogers, supra, was followed on this point by the Supreme Court of Washington in Kuehn v. Faulkner, 136 Wash. 676–679, 241 P. 290, 45 A. L. R. 571.

Reading the Insurance Code of Washington as a whole, and bearing in mind the decisions of the Supreme Court of the state, we do not feel prepared to hold that the Legislature intended to change the common law's recognition of the validity of a parol contract of insurance. A federal court should be particularly reluctant to declare a state statute as derogating from the common law, or to pronounce a certain type of contract as violating the statutory public policy of the state, when the highest tribunal of that same commonwealth has repeatedly upheld the validity of the class of contract in question.

In connection with the subject of public policy, as it is viewed by the highest tribunal in the state of Washington, we may quote from the decision in Terhune v. Weise, 132 Wash. 208, 217, 218, 231 P. 954, 957, 38 A. L. R. 94:

"The declaring of contracts void as against public policy is a dangerous thing. We find a contract here which is not made illegal by any statute, which was not made in restraint of trade, interferes with none of the functions of government, which is not immoral, but which merely provides for aid to a corporation seeking to escape financial difficulty. It is hard to see in what way such a contract contravenes any public policy. It cannot be such a contract, when its inception is valid, becomes invalid because the purpose for which it was entered into does not succeed. 6 R. C. L. 711 lays down the rule, and it is also stated in 13 C. J. 427 as:

" 'It is clearly to the interest of the public that persons should not be unnecessarily restricted in their freedom to make their own contracts; and therefore agreements are not to be held void as being contrary to public policy unless they are clearly contrary to what the Legislature or judicial decision has declared to be the public policy, or they manifestly tend to injure the public in some way.'

"In Hartford Fire Ins. Co. v. Chicago, M. & St. P. R. Co., 70 F. 201, 17 C. C. A. 62, 30 L. R. A. 193, the syllabus reads:

" 'The public policy of a state or nation must be determined by its constitution, laws, and judicial decisions; not by the varying opinions of laymen, lawyers, or judges as to what the interest of the public demands. A party who seeks to put a restraint upon the freedom of contract in any case must make it plainly and obviously clear that the contract in question is against public policy.'

"In Burne v. Lee, 156 Cal. 229, 230, 104 P. 438, 442, the Supreme Court of California declares that:

" 'If (the agreement) can be accomplished in any legal method, it must be assumed that that method was in the contemplation of the parties when the contract was made, and will be pursued.' "

We advance to the final contention of the appellants; namely, that "In the event that this Court holds there was a sufficient contract to bind the Insurance Company, the judgment against the appellant Agency must nevertheless be reversed, because neither the evidence nor the findings connect it with the contract on which recovery was awarded."

To sustain their assertion so far as the findings of fact are concerned, the appellants elsewhere in their brief state: "The special findings found that the Agency was engaged in the business of issuing policies of insurance for the Insurance Company and appointing agents for it, and that the agents connected with the contract in suit were appointed by the Agency. There was no finding, however, that the Agency had anything to do with the making of the contract sued on."

Counsel for the appellee rely upon finding No. 5, in which Hahn's connection with both the appellants is fully set forth, and to which the appellants refer in that portion of their brief just quoted. In addition, however, we point to finding No. 8, which specifically connects the agency with the contract in question: "That on or about the 10th day of June, 1930, the said Hahn & Daly, then the duly qualified and acting agents of the defendants, and each of them, as hereinbefore alleged, as such agents, entered into an oral contract of insurance with the plaintiff," etc.

On the question of the lack of evidence to support the allegation in the complaint that the appellant agency was a coinsurer of the property destroyed, the appellants state that all allegations to that effect were denied by the answer, and that "There was no evidence given tending to connect the Agency with the insurance."

In an attempt to answer this contention, the appellee admittedly goes "slightly outside of the record," and points out "that after the pleadings were made up, counsel for appellants by letter admitted the truth of the allegations contained in paragraph III down to the word 'which.' * * *" Since this letter is not made part of the record, we cannot consider it.

The appellee, however, does point out references in the exhibits introduced in evidence which clearly link the two corporations with each other and with the contract in question. The printed indorsement of the policy "pulled" in the instant case, as hereinbefore set forth, reads in part as follows: "Policy of the Globe and Rutgers Fire Insurance Company of the City of New York, issued through the Globe Underwriters' Agency"—with one New York address given for both.

Again, the "certificate of authority" by which Hahn & Daly were appointed agents in Spokane and vicinity, recites that the firm is to be the agent of the "Globe Underwriters Agency of [sic] the Globe and Rutgers Fire Insurance Company of New York."

Finally, the "insurance agent's license" issued by the department of insurance of the state of Washington, certifies that: "Hahn & Daly, Spokane * * * a duly appointed agent of the Globe & Rutgers Fire Insurance Company (Globe Undws. Agency), New York, is hereby authorized," etc.

Accordingly, we are of the opinion that the judgment should be affirmed as to both appellants.

Judgment affirmed.