THE NEW ORLEANS INSURANCE ASSOCIATION, APPELLANT, vs. M. A. BONIEL, APPELLEE.

Plaintiff procured a policy of insurance in defendant association, through an employee of an agent, and after it expired applied for a renewal, but declined to pay the premium and take the renewed policy, and it was cancelled. He afterwards requested the same employee of the same agent to insure his property, and paid part of the premium, but did not specify in what company he desired to be insured, the same agent being the agent of several companies, and no policy was issued. After destruction of the property by fire he paid the employee the balance of the premium, but the agent returned the money, declining to issue a pol·

icy. Defendant had no knowledge that the employee had anything to do with their business. Upon these facts, the plaintiff had no contract for insurance in defendant association.

Appeal from the Circuit Court for Escambia county.

Boniel, plaintiff below, sued the appellant upon a contract of insurance made by plaintiff with appellant, through one Bell, its agent at Warrington. The following are the material facts appearing in record :

Prior to and at the date of the fire out of which this suit arose T. C. Watson was the agent at Pensacola of several insurance companies of which appellant was one. He then had, and for several years previous had had in his employ at Warrington, Fla., one Gam. Bell, whose duty it was to receive applications at Warrington for insurance in the companies represented by Watson, to forward them to Watson at Pensacola, deliver to the insured the policies when issued, and receive the premium and transmit it, less his commission, to Watson.

On January 19th, 1882, Boniel applied to Bell for insurance to the amount of $300.00 on his furniture, clothing, &c., in his dwelling, and $200.00 on his stock in his store in Warrington, and a few days thereafter received his policy in the New Orleans Insurance Association, and paid his premium to Bell. At the expiration of that policy, July 19th, 1882, Boniel applied to Bell for its renewal. Bell, a few days after, tendered him the renewed policy, but Boniel being unable to pay the premium at the time, asked Bell to hold the policy for him for awhile, which Bell did ;. Boniel continuing to fail to pay the premium, Bell finally returned the policy to Watson, some time in August.

On September 29th, 1882, Boniel again applied to Bell for insurance to the amount of $300.00 on his clothing,

furniture, &c., in his dwelling, and $300.00 on his stock in his saloon.

It seems that no mention was made by either, of the company which was to issue the policy. It was agreed between them that the premium should be $18.00, and of that sum Boniel then and there paid Bell $5.00, the latter agreeing to wait on him for the balance, and giving to him, Boniel, a receipt for $9.00 in the following words and figures, to wit:

WARRINGTON, FLA., Sept. 29th, 1882.

Received of M. A. Boniel nine dollars on account of insurance applied for this day.

$9.00.                                For T. C. WATSON,

                                        Per G. BELL.

On October 3d Boniel paid Bell $4 more on account of the premium.

October 6th a fire occurred at Warrington, which destroyed Boniel's dwelling, with his clothing, furniture, &c., the value of the latter being $1,100, and on October 9th Boniel paid Bell $9 more on the premium, making in all $18 paid by him to Bell on account of the policy applied for September 29th, 1882. This money Bell forwarded to Watson, who refused to receive it or to issue the policy for which it was paid, and Boniel refusing to receive it back, Bell still holds it. Boniel made his proofs of loss, delivered them to Watson and demanded payment, which was refused by Watson and the New Orleans Insurance Association.

The court having charged the jury they returned a verdict for plaintiff for $324 damages. A new trial was moved on the grounds that the verdict was unsupported by the evidence, that it was contrary to the charge of the court and contrary to law, and because of error in the charge.

The motion having been denied, judgment was entered and defendant appealed.

*W. A. Blount* for Appellant.

*S. R. Mallory* for Appellee.

The Chief-Justice delivered the opinion of the court.

There is no pretence that there is any testimony in the case showing that when plaintiff applied for the insurance *any* company was mentioned in which plaintiff desired to have his property insured. Watson was an agent for several fire insurance companies, and Bell, who seems to have been his employe in receiving applications for insurance and forwarding such applications to Watson for his action, and in delivering policies, when the applications were accepted by Watson, and collecting premiums thereon at Warrington for Watson, had no other agency in the matter. This general employment of Bell was not in reference to insurance in the defendant company alone but extended to several other companies for which Watson was the agent.

Bell never had any correspondence with defendant on its or his business, and it does not appear that the company had any knowledge of Bell's connection with Watson or with their business. There is no testimony in the case from which a legitimate inference can be drawn that plaintiff desired to insure his property in this company. The facts were simply that in January, 1882, he took out a policy for $300 on his property in a house at Warrington and $200 on stock of wine, &c., which expired in July. In August he desired to renew it and a policy issued by defendant was tendered him, but as he failed to pay the premium it was returned to Watson and cancelled. Afterwards in the latter part of September he " applied to Mr. Bell for insurance to the

amount of $600; $300 on my furniture, wearing apparel, &c., in my dwelling house, (afterwards burned) and $300 on my stock in my saloon." The property was not in the same house it was in when the first policy was taken out. And so the conditions being changed the amount of insurance desired being different, and no company being designated, there is no ground for the presumption that this company had entered into any contract to insure the property from the circumstances that they had before that issued a policy to him which had expired and which he manifestly declined to renew. In view of this conclusion it is unnecessary to consider other questions. The verdict was against the evidence and was not warranted by the charge of the court.

Reversed and new trial granted.