## CHARLESTON.

CROFT v. HANOVER FIRE INSURANCE CO. *et al.*

Submitted January 28, 1895—Decided April 13, 1895.

1. INSURANCE — ORAL EXECUTORY CONTRACT — STATUTE OF FRAUDS.

    An oral executory contract for fire insurance is valid, the statute of frauds not applying to it.

2. INSURANCE—ORAL CONTRACT—EQUITY JURISDICTION.
   If an oral contract for fire insurance has been made, and before the issuance of the policy the property is destroyed by fire, equity has jurisdiction to compel payment of the indemnity.

3. INSURANCE—MISTAKE AS TO TERM.
   Though the assured understands the term to be covered by the insurance to be one year, and the agent of the insurance company understands it to be three years, costing in either case the same premium, this does not render the contract incomplete, so as not to warrant recovery for loss by fire occurring within one year.

4. INSURANCE—AUTHORITY OF AGENT.
   Where an agent represents several insurance companies, and is intrusted with blank policies, signed by the officers, with authority to negotiate policies and issue them without referring them to the companies, and it is agreed by the insured that the agent shall place the risk in such company as he selects, and he does place it with a company, as shown by a memorandum made by him, the agreement is binding upon the company.

5. INSURANCE—AMOUNT OF POLICY.
   Where, by agreement between the insured and the agent, the agent is to fix such amount of indemnity as he sees proper, and he does fix it, as shown by a memorandum made by him, the oral agreement is binding on the company.

6. INSURANCE—PAYMENT OF PREMIUM.
   An agent of an insurance company authorized to negotiate risks may give credit in such executory agreement for the premium.

7. INSURANCE—PAYMENT OF PREMIUM.
   Unless in such agreement pre-payment is made a condition precedent, the premium need not be paid until the policy agreed upon is ready to be delivered.

8. INSURANCE—MISTAKE AS TO INSURED—CORRECTION IN EQUITY.
   The agent, by mistake, entered in his memorandum the name of the wrong person as the assured. This will be corrected in a suit in equity on such executory oral agreement, and the person who owns the property insured and who negotiated the insurance may recover in his own name.

HUTCHINSON, HUTCHINSON & CAMDEN for appellants:

*In any action or suit founded upon contract, every averment setting forth the date and terms of the contract is an allegation of matter of essential description, and must be proven with a degree of strictness extending to literal precision.*— Greenl. on Ev. vol. 1, part 2, chap. 2, §§ 56-58; 3 W. Va. 285 ; Idem, 556 ; 8 W. Va. 568.

*To constitute a valid contract to insure against loss by fire,*

the minds of the parties must meet as to the premises to be insured, and the risk, as to the amount of the policy, the date it should begin, and the time for which it should run; and as to the premium to be paid.—28 New York 153; 94 U. S. 629; May on Insurance, vol. 1, § 50.

The application for insurance must be accepted as made, and any departure from it, unless subsequently approved by the applicant, is fatal.—23 Wall. 85.

Where an agent acts for several insurance companies, and no particular company is named in the negotiations for insurance, or fixed by prior dealings, the contract is not complete.—65 Wis. 436; 20 Fla. 815; 50 N. Y. 402.

Where the issue is whether the acts of an agent amount to a preliminary contract to insure, declarations of the agent, not made while negotiating the insurance in question, to the effect that what he has done was sufficient, in his opinion, to bind the company, are not competent evidence of the fact as against his principals.—28 N. Y. 159, 160.

In order to have specific performance of a contract, the contract must be established, by competent proofs, to be clear, definite and unequivocal in all its terms. If the terms of the contract are not made out by satisfactory proofs, or if a new term would have to be introduced, specific performance will not be decreed.—23 Gratt. 595; 68 N. Y. 192.

W. G. PETERKIN for appellee:

1. *Contract to insure may be by parol.*—94 U. S. 594; Wood on Fire Ins., § 4; May on Ins., § 22; 20 Wall. 560; 19 How. 313.

2. *Agreement to insure distinguished from policy of insurance,*—May, § 45.

3. *Contract was complete on Sept.* 13, 1891, *when all the terms were settled, and nothing remained to be done, but to write the policy and pay the premium.*—May, § 43a.

4. *It is not necessary for applicant for insurance to name company.*—May § 58, § 59 (end); 123 Mass. 324.

5. *Prepayment of premium not necessary to constitute valid insurance contract.*—Wood § 30.; 21 Am. St. Rep. 883, note; 20 Wall. 560; 31 Gratt. 362.

6. *Mistake as to name of insured is immaterial, and can not impair right to recovery.*—May, § 566a; Wood § 294; 28 W. Va. 583; 33 W. Va. 526; 37 W. Va. 283; 8 A. M. Rep. 150; 136 U. S. 287; 98 U. S. 85.

7. *Court of equity has jurisdiction to decree payment.*— Wood, § 12; May § 565; 31 Gratt. 365; 9 How. 390; 19 How. 313; 20 Wall. 560.

8. *Decree of court below is presumed to be according to the law and the truth of the case until the contrary is made manifest.*—Beach Mod. Eq. Prac. § 972; 2 Black, 581; 16 W. Va. 685, 713.

9. *If upon examination of whole record decree appears to be substantialy correct, it should be affirmed.*—Bart's Chan. Prac. 2, § 374, p. 1139; Minor's Inst. Vol. 4, pt. 1. p. 870 [3d edition p. 1077-8] and cases cited.

10. *Decree for specific performance reviewed only if it appears to have been rendered in disregard of some well established principle of law or equity.*—2 Beach, § 979, quoting 14 Ves. 585; 55 Fed. Rep. 190, 203.

11. *All facts not expressly found are presumed to have been found in support of judgment.*—29 Pac. Rep., 403; 3 Am. St. Rep. 738.

VAN WINKLE & AMBLER for appellee:

1. *Remedy in this case is in equity.*—May on Ins. § 565; 31 Gratt. 362; 94 U. S. 651.

2. *Where agent of several companies designates any, he binds the one or more designated.*—May on Ins. sec. 43 A. 58-9; Wood on Ins. sec. 26-9; 123 Mass. 324.

3. *Premium may be on credit, as in* 94 U. S. 627; 20 Wall. 560; 136 U. S. 292; 10 W. Va. 589.

4. *No mistake in name by agent can avoid company's liability.*—28 W. Va. 583; 98 U. S. at p. 91-2; 31 W. Va. 851; 33 W. Va. 526; 25 Amer. State Rep. 908; 37 W. Va. 272.

5. *Every essential element agreed on.*—Wood on Ins. 294 and cases above.

6. *Tender dispensed with.*—18 W. Va. 320.

7. *Any view of period, covered date of fire. Plaintiff may accept one year, though entitled to three.—30 W. Va. 335; 19 W. Va. 240.*

BRANNON, JUDGE:

This was a suit in equity in the Circuit Court of Wood county by Walter L. Croft against the Hanover Fire Insurance Company and the Citizens' Fire Insuance Company for the specific performance of an agreement to issue a policy of insurance upon a dwelling house, which was consumed by fire. The court decreed that the insurance companies pay the insurance stipulated for, and the companies appeal.

No policy was actually issued, but the suit is based on an oral contract to insure and to issue a policy accordingly. As the "Statutes of Frauds and Perjuries," so called (Code, c. 98) does not apply to insurance, an agreement to insure need not be in writing. Wood, Ins. § 4; May, Ins. § 14; *Insurance Co.* v. *Colt,* 20 Wall. 560. I do not think clause 7 of chapter 98 of the Code applies to the case, even if the policy agreed upon was for three years. *Kimmons* v. *Oldham,* 27 W. Va. 258.

When a contract for insurance has been made, but no policy to evidence it has been issued, the remedy of the insured, after loss, may be by bill in equity, on the principle of specific performance; and the court does not simply decree the specific performance of the agreement by the actual execution of a policy of insurance, and then compel the insured to bring an action on that policy, but, to avoid multiplicity of actions and delay, having the parties before it properly for specific performance, will at once decree the payment of the amount which would be recoverable under the policy if issued, agreeably to that principle of equity practice that as all the necessary parties are before the court for one purpose, it will give full and complete relief, and not send them to another court. *Wooddy* v. *Insurance Co.,* 31 Gratt. 362; May. Ins. § 565; Wood, Ins. §§ 11, 12; *Insurance Co.* v. *Colt,* 20 Wall. 560. Or he may sue at law, by same authorities.

But the defendant companies say there was no contract

to sustain a suit, because the contract was vague, uncertain and incomplete. Herein lies the turning point of the case. As to proof, there is nothing peculiar in contracts of insurance. As in other cases, the contract must be definite and certain, and the parties must have agreed upon all essential terms. The contract must be such as to bind both parties— the one to insure, the other to pay the premium. All elements must be agreed upon, and if anything is left open or undetermined, so that the minds of the parties have not met, no contract exists, and there is no liability for a loss; as, where the rate of premium is left undetermined, or the time when the policy shall attach, or the apportionment of the risk has not been agreed upon, or the insured retains control over the premium note or any papers the delivery of which is a condition precedent, or if anything remains to be done by the insured as a condition precedent, as the payment of premium, or if the duration of the risk is not agreed upon, or any condition precedent has not been complied with. The *aggregatio mentium* (union of minds) must be fully established, and nothing must remain to be done but deliver the policy. The details of the contract must be fixed, and, if the agreement or understanding of the parties in reference thereto is not mutual—that is, if one party understands the matter one way, the other another—the minds of the parties have not met, and there is no contract in law or equity. Of course, the burden of proof to show such a contract as is enforceable is on the plaintiff. Wood, Ins. § 6.

The chief point of question in the contract, as it seems to me, is as to the length of time the policy was to run. It has been stated above that this is an essential element in a valid contract. The parties must agree upon a time for the duration of the policy. The plaintiff says that he applied for a policy on his dwelling house for one year, and understood that the agreement with the agents was for one year. One of the agents says he understood it to be three years. The agent says he made no memorandum in writing on this occasion. According to the evidence on both sides, in that interim an agreement was made for the insurance of the dwelling house in such sum as the agents.

should fix, at a certain rate, and the policy was to be made
out and sent by mail to the insured, and he was then to pay
the premium, or it was to be charged to his father, who
had other insurance with these agents, as the agents pre-
ferred.  The agents agreed and promised to send the policy.
They had policies in blank, signed by the officers, and they
had authority to fill out and deliver them without applica-
tion to the chief officers of the companies.

About one month after this, a brother of the plaintiff, by
authority of his brother, met the one of the agents who had
negotiated for the policy, and asked the agent for it, and
was told that it had not been made out, as he had not satis-
fied himself as to the amount for which the policy should be
written.  The plaintiff's brother told the agent he wished
it fixed up, and the agent himself says that he told the
brother that he would fix it then as far as he could, as he
was on his way to the train to go on a trip, but would at-
tend to it; and he then wrote in a private memorandum
book this memorandum:  "W. M. Croft, $600.00 on one-
story fr. shingle roof dwell., near Davisville, 1¼—3 yrs.  N.
Y. Underwriters."  The brother told him to send the policy,
and he would send the money to pay the premium, to which
the agent assented.  The evidence shows the agent agreed
to credit; did not demand prepayment.  It is not claimed
otherwise.

About a month after this interview between this agent
and the plaintiff's brother, the house was destroyed by fire,
and this brother, the next day, called on the agents, and
asked for the policy.  The agent said he had written it,
but had mislaid it, and searched and could not find it, and
said he would look for it, and to call later, and then the
brother informed him of the fire.  In the afternoon the
brother called again for the policy, but the agent had not
found it.  Later this agent concluded he had never writ-
ten it up.  After this the plaintiff tendered the agent the
premium money, but he declined it, saying that he had in-
formed the company of the fire, and the adjuster would
soon come, and, "under the circumstances," he would not
take the money.

We can say from the evidence on both sides that an agree-ment to insure was made, and nothing remained to be done but to issue the policy, and that the agent promised to do this. All the elements were settled, except as to time to be covered by the policy, let us say. The property was named. The plaintiff gave its value. The amount of the indemnity was left by the plaintiff absolutely to the decision of the agent. He would have right to fix that anyhow. It was with him to say just how much he would insure it for. He did fix it, as the memorandum shows. The rate of prem-ium was fixed. The discretion to select the company was left to the agent. The agent, as a witness, says it was only through his neglect or forgetfulness that the policy was not issued. He says the policy should have been issued. But the insured asked and understood that the insurance was to be one year, while the agent understood it to be three years. What effect can this have? The defense would use it to show there was no finished agreement, under that principle of law, stated above, that all elements must be agreed, and time is an essential element, and that when one party understands an essential element of the contract in one way, and the other in another way, the minds of the parties have not met on that essential element. But what practical harm can this circumstance do to the companies? The fire occurred within one year. The plaintiff says to the companies: "You are liable to me. You agreed to insure me for one year, and the fire occurred within one year." The companies plead in reply: "We are not liable because we agreed to insure you for three years." The plea is not good. It confesses the fact of insurance. It does not deny that the fire was in one year, and the fact that the term was three years is not material, the three years covering one year. The rate agreed was the usual one for three years. Croft's evidence, however, is that the term was one year. It is a case of conflicting evidence as to this. If he is believed their minds met on one year. We should not where two witnesses thus disagree, reverse the decree, there being no other evidence as to that.

It is contended for the defense that no company was named

as the insuring company at the time the agreement was made, and that never until a month later, when in the memorandum above mentioned, the agent wrote the New York Underwriters as the insurers, was there any particular insurer mentioned. Here the evidence of the plaintiff and the agent conflicts, the former saying that the New York Underwriters were named as the insuring parties. The defendant companies did business under that name. Let us say that no insuring party was named at the time of the agreement. The firm of K. S. Boreman & Son were insurance agents, doing business for the defendant companies, and also other companies, and both plaintiff and the one of said firm acting in this matter (to whom I have often referred above and may below, as agent) say that it was left to the agent to assign the risk; that is, give the insurance to what company they pleased. Croft, having confidence in the experience of the agents with the various companies, committed this discretion to them. This is often done. It is lawful and binding on the company selected by the agent, when they have policies signed in bank, to issue to whom they choose. It does not render the agreement incomplete as for want of contracting party. Wood, Ins. § 25, and note; May, Ins. § 59, end. The agents clearly had power to make a contract binding these companies by name as insurers at the time of the contract. Then, when the party insuring leaves it with the agents to select any of the companies represented by them, why is it not binding? If the party insured does not object, how can the company object? These two companies had an agreement that in all policies taken in the name of the New York Underwriters they should share premiums and liabilities in certain proportion. Until the agent does select the company, there is no contract; but when he does, then there is. Let the date of the memorandum naming the underwriters as the insurers be at the date of the agreement or afterwards, it was before the fire. It became, as to this point, a contract before the loss. The agent wrote to the companies after the fire that he had assigned the risk to them. *Sheldon* v. *Insurance Co.*, 65 Wis. 436 (27 N. W. Rep. 315) cited, is not in point. An

agent agreed to insure in some company represented by him, but not designated, on certain terms. The defendant decided to insure on different terms, but, before acceptance, the company declined to do so. Held, there was no contract. The judge, admitting that when it is left to an agent to select the company, it is binding when he designates the company said it is not a contract until he designates. The memorandum of designation there showed a rejection by the company, and the court held it a departure from the order of the company in designating a less premium than it had proposed to accept. The case of *Association* v. *Boniel*, 20 Fla. 815, is not in point. A sub-agent agreed to insure in a company not designated, and there is no showing that he was to select it, and he never did designate one, and he had no authority.

There is an indirect allusion in brief of counsel to the non-payment of the premium, but the point is not distinctly made. It would be untenable. The proof is full that the agreement was that when the policy should be sent, Croft would bring or send the money, or it could be charged to his father, and the agents assented. Now, insurance can be sold on credit as well as anything else. The agent can give credit. *Eagan* v. *Insurance Co.*, 10 W. Va. 583, 588; Wood, Ins. § 28; May, Ins. § 360 D; *Insurance Co* v. *Colt*, 20 Wall. 560; *Long* v. *Insurance Co.* (Pa. Sup.) 21 Am. St. Rep. 883, note, 20 Atl. 1014. Pre-payment is not necessary to the conclusion of an oral contract. Wood, Ins. §§ 22 A, 43 B. But, in addition, if credit had not been given, there was no obligation to pay until the policy was ready to be delivered, and the companies were to do that, and did not, though asked to do so. Wood, Ins. §§ 29, 30; May, Ins. §§ 22 A, 43 C.

The agent made out the memorandum in the name of W. M. Croft, not in that of plaintiff, Walter L. Croft, by mistake. The plaintiff owned the house and applied for the insurance, and made the agreement. From the fact that his father, W. M. Croft, had insurance from these agents, and the latter thought that the father owned the house, the mistake was made by the agent. The plaintiff says he told him the house was his. No pretense or claim of falsehood

or concealment is made against the plaintiff. The agent swears that it would have made no difference, as he would have as readily insured in the son's name. This mistake is mentioned in the brief, but merely mentioned. It can have no effect. Even a policy in a wrong name may be reformed and rectified after loss. This is a suit on an oral, executory agreement, and we are in a court of equity. May, Ins. § 566 A; *Thompson* v. *Insurance Co.*, 136 U. S. 295 (10 Sup. Ct. 1019); May, Ins. §§ 479, 482. This Court decided in *Deitz* v. *Insurance Co.*, 33 W. Va. 526 (11 S. E. Rep. 50) that where, by mistake, the agent wrote the name of the husband as the assured instead of the wife, it would not defeat recovery by the true owner. See, also, opinion in *Travis* v. *Insurance Co.*, 28 W. Va. 583. But this memorandum is not the contract. There is evidence to sustain the court in holding the agreement was with the plaintiff. The suit is on the oral contract. The memorandum is only important as showing a designation of the insuring companies; it is not the contract. Plaintiff in person applied for the policy and told the agent the house was his. The agent accepted the risk of the plaintiff in person, and why should we or the agent say the contract was with the father? The agent, as a witness, does not claim he was misled; attributes no bad faith whatever to the plaintiff. He inferred, because the plaintiff was a young man of thirty, and the father had a mill property close by, and was a man whose name was on the insurance book as to other insurance, that the father owned the house. It was merely his inference. The real contract was in fact and in law with the plaintiff. *Prima facie*, if the plaintiff did not mislead, it would be his contract. The agent says it was merely his inference. I repeat, the memorandum is not the contract. If it were, the mistake could be corrected.

Variance. This is relied on in a brief of counsel. As regards the matter last spoken of—the name—there can be no variance between allegation and proof. The bill alleges the oral contract as made with the plaintiff, and, as I have shown, the proof is of a contract made with the plaintiff. The memorandum is not the contract sued on; and if it were,

the bill states the mistake in it, and gives reasons of mistake, why it, if the gravamen of the suit, should be treated as one made with plaintiff. Either party may have even a written contract specifically enforced with such corrections as parol evidence may show to be necessary to correct a mistake. *Creigh* v. *Boggs*, 19 W. Va. 240.

Variance as to Date of Contract. There is no variance between bill and proof in this respect. The bill says that "about the middle of July, 1891, the plaintiff applied to the agent for the insurance," *etc.*, "and that at that time, to wit, July, 1891," a certain agreement was made. The proof shows, I think, that this was on the 11th of August. Is it possible that we must, in a suit of equity, overthrow the decree for this? There is no variance. The substance and real point of the allegation is that a contract of insurance was made. The date is not material. Even if the bill said it was on a fixed day in July, it would not be fatal, the agreement not being a writing. Even in formal law actions, allegations of "time, place, quantity and value, when not descriptive of the identity of the subject of action, will be found immaterial, and need not be proved strictly as alleged. Thus, in trespass, the material fact is the assault, the time and place not being material." 1 Greenl. Ev. § 61. A distinction exists between allegations of matters of "substance," and matters of "essential description." The former may be substantially proven; the latter must be proven with a degree of strictness extending in some cases even to literal precision. *Id.* § 56. But here the bill does not tie itself to a fixed date, but is "about the middle of July." Now, if it were a note or instrument described by date, it would then be, in the words of Greenleaf, "matter of essential description," the earmark of identity, and strict proof would be required, and such cases as *Scott* v. *Baker*, 3 W. Va. 285, would apply. This date is not matter of substance, but the substance is the contract and its essential elements. If there were a variance in them, it would be different. Therefore, cases like *Railroad Co.* v. *Skeels*, 3 W. Va. 556, and *James* v. *Adams*, 8 W. Va. 576, do not apply.

Substantial and even-handed justice has been done in the

case by the decree, and, when that is so, there ought not to be a reversal, though on some point it may be open to question.   4 Minor Inst. 870; Barton Ch. Prac. 1,139.

The agents agreed with the plaintiff, for a given consideration, to insure a particular house owned by plaintiff, in a sum which the agent was to and did fix and for a period of time covering the date of the loss by fire.   Nothing remained to be done but issue the policy, which the agent promised to do.   These things he himself proved.   Both parties understood that the plaintiff was insured.   Every element was final to base that policy on.   The agents were authorized to issue it.   His own memorandum told him every single element from which to issue it, except the name of the insured; and, had he issued it in the wrong name, the mistake could be corrected, and a suit maintained upon it.   The only thing wanting is the policy to perfect the insurance.   Whose fault that it was not issued?   Where is the plaintiff in fault or default?   To decide the case against the plaintiff, his house is lost, without the indemnity he fairly contracted for; to decide against the defendants is only to make them do what they fairly contracted to do.   The defense set up at first blush inspires some questions; but, on consideration, it becomes a figment, which withers away.

Courts must not let insurance companies evade their policies through mere technicalities.   They must be treated fairly, and only held up to their fair engagements.   They are very valuable institutions, deserving patronage and encouragement; but when their contracts of indemnity prove worthless, for unsubstantial reasons, to those who are in distress and poverty from the waste of fire, against which their prudence sought to provide, it derogates from the efficacy of the policies and the confidence of the public in fire insurance.

For these reasons, we are clearly of opinion to affirm the decree.