MILWAUKEE BEDDING COMPANY, Respondent, vs. GRAEB-
NER, Appellant.

*November 13—December 11, 1923.*

*Insurance: Oral contracts of insurance: Contract to procure in-
surance: Breach: Liability of agent: When insurance takes
effect: Local custom: Designation of insurer by agent: How
made.*

1. In view of sub. 2, sec. 1941—64m, Stats. 1921, prohibiting the
   issuance of fire insurance contracts by any one except author-
   ized fire insurance companies, an action cannot be maintained
   against an agent, as such, on an agreement to insure, on the
   theory that a conversation between a representative of the
   agent and the plaintiff amounted to an oral contract of in-
   surance between the agent and the party seeking the insur-
   ance.   p. 176.
2. If an insurance agent agrees and undertakes to procure insur-
   ance and fails to do so, he is liable for the resulting damages.
   p. 176.
3. Sec. 1977, Stats. 1921, which provides that any person who so-
   licits insurance on behalf of a corporation shall be held to
   be an agent of such corporation unless it can be shown that
   he received no compensation for such services, refers to
   agents of insurance corporations, and cannot be invoked to
   establish an agency in behalf of any one not an insurance
   corporation.   p. 177.
4. It being part of the duties of an employee of an insurance
   agent to look after the renewals of expiring policies, call on
   patrons whose policies were about to expire, and solicit re-
   newals thereof and additional insurance, and it being her
   practice to bring back cards setting forth facts showing what
   renewal business and what new business was to be written, it
   was not necessary that she have express authority to bind
   defendant to write or procure contracts of insurance, and
   under the evidence in this case the jury were warranted in
   finding that she had apparent authority.   p. 177.
5. Where such employee called on plaintiff to see about a renewal,
   and stated that they were then in a position to offer com-
   panies which would not cancel plaintiff's policies, and plaintiff
   said, "You can cover us for $2,000," such conversation was
   a contract by which defendant agreed to procure $2,000 ad-
   ditional insurance.   p. 178.
6. In an action against the agent for his failure to procure addi-
   tional insurance for plaintiff, where plaintiff stated that there
   was nothing said as to the date when it was to take effect,

and it was found that it was an established custom among brokers and agents that fire insurance should, in the absence of directions as to when coverage should commence, take effect from the noon preceding the order for the same, such custom must be taken to have entered into and become a part of the contract, supplying the incident as to when it should take effect. p. 180.

7. Notwithstanding sub. 1, sec. 1960, Stats. 1921, impliedly prohibits oral contracts of health and accident insurance, an oral contract for fire insurance is not invalid under sec. 1941—64. p. 179.

8. Where application for insurance is made to an agent who represents several companies, no contract is engendered between the insured and any particular company until such company is designated by the agent; but where the agent selects a company a binding contract results. p. 180.

9. A memorandum made by an employee of the insurance agent for additional insurance in the L. & A. Co., which was intended to designate the London Assurance Corporation as the company in which the insurance was to be written, is sufficient to establish a binding contract between plaintiff and such corporation, and there was therefore no breach of defendant's contract to procure such insurance. p. 181.

APPEAL from a judgment of the circuit court for Milwaukee county: E. C. HIGBEE, Judge. *Reversed.*

The defendant is an insurance agent representing a number of insurance companies in the city of Milwaukee. Agnes Graebner was his daughter and an employee in the office. A policy of insurance written by *Graebner* in the Fire Association Company insuring property of the *Milwaukee Bedding Company* to the amount of $3,000 expired on the 1st of March, 1920. Miss Graebner called at plaintiff's office on February 24, 1920, to see about the renewal of the policy. She interviewed Theodore Schilling, secretary-treasurer of the *Bedding Company,* and a renewal of the policy was agreed upon. Thereupon there was talk concerning additional insurance. According to the testimony of Mr. Schilling the conversation was as follows: Miss Graebner asked Mr. Schilling if he did not want to take out some more insurance. Schilling answered: "We

are in need of insurance now, Miss Graebner, but I cannot give it to your firm because some of the companies which you represent have canceled some of our policies before, and we do not like to do business with companies that cancel the policies." She then said: "It is true, Mr. Schilling, that some of the policies have been canceled, but we are now in a position to offer you companies which will not cancel your policies." He said: "Well I am glad to hear this, Miss Graebner, because I like to do business with you. So if you are sure that the policies will not be canceled you can cover us for $2,000." She said: "I thank you, Mr. Schilling."

Before leaving the office of the *American Bedding Company* Miss Graebner made a certain memorandum on a card, of which the following is a copy:

> 4924  198 Mil. Bedding Co.
> 3000—1st Stock
> 292—6—4 St.
> *Renew*
> $2,000 add'l in L. & A. Co.
> 5108225
> _____
> 4888793

According to Miss Graebner's testimony the figures 4924 198 indicated the Fire Association Company; $3,000 meant the amount of the policy; stock, indicated that the policy covered stock and expired on the 1st of March; 292—6—4 St. indicated the number and street of the premises insured; the word "renew" meant that the policy was to be renewed; $2,000 add'l in L. & A. Co. indicated that an additional policy of $2,000 was to be written upon the property in the London Assurance Corporation. This card was taken by her to the office and deposited by her in a drawer where such cards were usually deposited. In the ordinary course of business this with similar cards would be placed on the desk of Mr. Wenzel, a sort of an executive

manager of the business of the office, for his approval. If he approved, he put an O. K. on the card. The card was then passed to the policy clerk, who drew the policy. For some reason this card did not receive the approval of Mr. Wenzel before noon of the 25th.

Shortly after 12 o'clock of the 25th fire broke out in the plant of the *Milwaukee Bedding Company* and completely destroyed its stock. The amount of loss uncompensated by other insurance was $1,473.53. While the fire was still burning, Mr. Schilling, plaintiff's secretary-treasurer, went to the office of plaintiff's attorneys and told them he had placed $2,000 additional insurance on the stock the previous day, but had not yet received the policy. The attorney then sent one of his stenographers to the *Graebner* office to demand the policy, but did not inform her that the building was on fire. The policy was not written. Miss Glatt, a policy clerk, so informed the messenger. The messenger said, however, that she was supposed to take the policy back with her and that she would wait until it was written. Miss Glatt then looked into the drawer to see if there was any memorandum covering a policy for the plaintiff company. She found Miss Graebner's memorandum card, which she interpreted as calling for a new policy for $2,000 in the London Assurance Corporation, to be dated March 1st. While it had not been approved by Mr. Wenzel, she thought that inasmuch as it was not going into effect until the 1st of March there would be no harm in writing the policy, as it could be canceled if the risk was not approved. She wrote up the policy and gave it to the messenger. Mr. Wenzel was not in the office at the time. No one in the *Graebner* office knew that the building was on fire. When the London Assurance Corporation policy reached the office of plaintiff's attorneys and the date of March 1st was noted, the policy was returned, for the reason that it should have covered the property from the 24th day of February instead of the 1st day of March.

This action was brought against the defendant to recover the amount of the loss resulting from the fire which was not covered by other insurance, namely, $1,473.53. There was a special verdict of the jury wherein it was found (1) that there was on the 24th day of February, 1920, an established and generally recognized custom among insurance agents and brokers in the city of Milwaukee that fire insurance should, in the absence of directions as to the date when coverage should commence, take effect and be in force from the noon preceding the order for the same; (2) that defendant had knowledge of such custom; (3) that the defendant's daughter, Agnes Graebner, was held out by the defendant to the plaintiff and others as having authority to contract for insurance in his behalf; (4) that said Agnes Graebner, on the 24th day of February, 1920, agreed with the plaintiff on behalf of the defendant to write and place the sum of $2,000 of insurance on the stock of said plaintiff company; and (5) that it was the understanding of the parties at the time that such insurance was to be written to take effect forthwith. Upon this verdict the court rendered judgment in favor of the plaintiff and against the defendant for the sum of $1,413.53 damages, being the amount of the uninsured loss less $60 premium which it was to pay. From the judgment so rendered defendant brings this appeal.

For the appellant there was a brief by *George J. Graebner* and *Hoyt, Bender, McIntyre & Hoyt,* all of Milwaukee, and oral argument by *Ralph M. Hoyt.*

For the respondent there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Arthur B. Doe,* of counsel, all of Milwaukee, and oral argument by *Mr. Doe.*

OWEN, J. The respondent contends that this action may be maintained upon two theories, one of which is that the conversation between Miss Graebner and Mr. Schilling amounted to an oral contract of insurance between *Graebner* and the *Bedding Company* by which *Graebner* agreed to

insure the company for the period of one year from the 24th day of February, 1920. This theory cannot be sustained, for the reason that sub. 2, sec. 1941—64m, Stats., expressly prohibits the issuance of contracts of fire insurance by any except authorized fire insurance companies, in the following language:

"No unauthorized fire insurance company or other un- authorized insurer shall hereafter make or issue, directly or indirectly, any policy of insurance on property in this state, except as specifically authorized by law. All such contracts are declared to be unlawful, void and unenforceable, and no action in law or equity shall be maintained on any such contract in any court."

This statutory provision declares void and unenforceable any policy of insurance, whether oral or written, issued by any person except an authorized fire insurance company, and further, that no action in law or equity shall be maintained on any such contract in any court. In view of this provision it is plain that the defendant cannot be held liable on the theory that he was an insurer of the property.

The other theory is that the defendant agreed with the plaintiff to procure additional insurance; that he failed to do so; and that he is liable for the damages resulting from his breach of the agreement to procure insurance, under the doctrine of *Rainer v. Schulte,* 133 Wis. 130, 113 N. W. 396. That case is authority for the proposition that if an insurance agent agrees and undertakes to procure insurance and fails to do so he is liable for the resulting damages. In order to determine whether defendant is liable upon this theory, it is necessary to inquire, first, whether such an agreement was consummated, and second, whether, if consummated, there was a breach thereof.

It is defendant's contention that his daughter, Miss Graebner, did not have authority as his agent to bind him upon contracts either to procure or write insurance. In order to establish her agency respondent invokes the provis-

ions of sec. 1977, Stats., which provides in effect that any person who solicits insurance on behalf of any insurance corporation shall be held to be an agent of such corporation to all intents and purposes unless it can be shown that he receives no compensation for such services. This section refers to agents of insurance corporations and cannot be invoked to establish an agency in behalf of any one not an insurance corporation. It has no bearing upon the question whether Miss Graebner acted as the agent of the defendant in conducting the interview with the officer of the plaintiff company. The record fails to disclose any evidence that Miss Graebner had express authority to bind the defendant to either write or procure contracts of insurance. It appears that the manner in which the defendant conducted his business required applications for insurance to be approved either by himself or Mr. Wenzel before they were accepted, and that Miss Graebner had no authority whatever in this respect. It does appear, however, that it was a part, if not the principal part, of Miss Graebner's duties in the office to look after the renewal of expiring policies, to which end it was her usual custom to call upon patrons whose policies were shortly to expire and to solicit them not only for a renewal of the expiring policy but for additional insurance. It was her practice to bring back cards similar to the one which she made out in this case, set forth in the statement of facts, showing what renewal business and what new business was to be written. Such cards were placed by her in the drawer and entered into the routine of the office. While it is true that the evidence shows quite conclusively that she did not have power to pass upon and accept applications for insurance, it was not necessary that she have express authority in order to bind the defendant. It was sufficient if she had apparent authority. The trial court so instructed the jury with reference to the third question, and we think the evidence warranted the jury in finding that she did have apparent authority to bind the defendant in

such respect, and that the conversation between Miss Graebner and Mr. Schilling amounted to a contract by which defendant agreed to procure for the plaintiff additional insurance to the amount of $2,000.

There was a dispute at the trial as to the time when the additional insurance was to take effect. Miss Graebner testified that it was her understanding that it was to take effect on the 1st day of March. Mr. Schilling testified that there was nothing said as to the date when the additional insurance was to take effect; and the jury found that there was an established and generally recognized custom among brokers and insurance agents in the city of Milwaukee that fire insurance should, in the absence of directions as to the date when coverage should commence, take effect and be in force from the noon preceding the order for the same. Appellant does not contend that this finding of the jury is without support in the evidence, and this custom must be taken to have entered into and become a part of the contract, thereby supplying the incident thereof as to when the insurance should take effect. *Clarke v. Maisch,* 171 Wis. 225, 228, 177 N. W. 11. This view eliminates the question of whether the defendant had a reasonable time in which to procure the insurance before the fire.

Having reached the conclusion that there was a valid and binding agreement between the parties by which the defendant agreed to procure additional insurance to take effect February 24th, it only remains to be considered whether there was a breach of that contract. Appellant contends that there was a valid oral contract of insurance engendered between the London Assurance Corporation and the plaintiff, and that there was no breach of the contract to procure insurance on the part of the defendant, as the plaintiff could have maintained an action against the London Assurance Corporation to recover the amount of the loss upon the oral contract of insurance.

The case is argued by both parties upon the assumption

Milwaukee Bedding Co. v. Graebner, 182 Wis. 171.

that oral contracts of fire insurance are valid in this state. It has been so held many times, and we should pass the question by without further discussion were it not for our holding in *Schilbrch v. Inter-Ocean Cas. Co.* 180 Wis. 120, 192 N. W. 456, that sub. 1, sec. 1960, impliedly prohibits oral contracts of health and accident insurance. That section reads as follows:

"On and after the first day of January, 1914, no policy of insurance against loss or damage from the sickness, or the bodily injury or death of the insured by accident shall be issued or delivered to any person in this state until a copy of the form thereof and of the classification of risks and the premium rates pertaining thereto have been filed with the commissioner of insurance."

Sec. 1941*x* provides a standard form for fire insurance policies and requires the commissioner of insurance to prepare and file in his office a printed form in blank containing the provisions, agreements, and conditions specified therein. Sec. 1941—64 provides:

"No fire insurance company, corporation or association, except township mutual insurance companies, their officers or agents, shall make, issue, use or deliver for use any fire insurance policy on property in this state, other than such as shall conform in all particulars as to blanks, size of type, context, provisions, agreements and conditions with the printed forms of contract or policy so filed in the office of the commissioner of insurance."

It must be conceded that on the face of these two statutes the implication against oral contracts of insurance is as strong in the one as in the other, and that if no regard be had to the subject matter dealt with by these two sections, our reasoning in *Schilbrch v. Inter-Ocean Cas. Co., supra,* would compel the conclusion that by the language of sec. 1941—64 the legislature also intended to prohibit oral contracts of fire insurance. We cannot ignore the fact, however, that in the business and insurance world oral contracts of fire insurance have been and are very prevalent. It is

customary for business men to call up their insurance agent and place their order for fire insurance. It is considered by both parties that the coverage dates from the time when the insurance agent accepts the application. When the policy is written the coverage is dated from the time of the acceptance of the application, or the noon before, and the insured is charged with premium from that date.

It would operate as a serious disturbance of settled notions, as well as of the manner in which fire insurance business is conducted, to hold that the insured was without protection until the written policy was issued or delivered. We feel that the abolition of this long settled custom requires express legislative declaration. There is less reason for prohibiting oral contracts of fire insurance in view of the fact that there is but one standard fire insurance policy in this state to which reference may be made to establish the terms of the oral contract, and the further fact that the fire insurance policies are dated from the acceptance of the application and the premium is charged from that date. On the other hand, there is no such thing as a standard health and accident insurance policy. Those policies contain all sorts of provisions and are made to fit myriad conditions, and as a rule it is specifically provided in such policies that they do not take effect until they are delivered. Such a provision was in the policy under consideration in *Schilbrch v. Inter-Ocean Cas. Co., supra.* It is therefore our conclusion that oral contracts of fire insurance have not been prohibited, and our reason for considering the same is the thought that our decision in *Schilbrch v. Inter-Ocean Cas. Co., supra,* may have cast some doubt upon the question.

It remains to be considered whether there was a sufficient designation, by the agent, of the company in which the insurance was to be written, to constitute a contract between the *Bedding Company* and the London Assurance Corporation. It is a general rule that where an application for insurance is made to an agent who represents several com-

panies, no contract of insurance is engendered between the insured and any particular company until such company is designated by the agent. *Sheldon v. Hekla F. Ins. Co.* 65 Wis. 436, 27 N. W. 315; *Costello v. Grant Co. Mut. F. & L. Ins. Co.* 133 Wis. 361, 113 N. W. 639; *Hartford F. Ins. Co. v. Trimble,* 117 Ky. 583, 78 S. W. 462; *New Orleans Ins. Asso. v. Boniel,* 20 Fla. 815; *Michigan P. Co. v. Michigan F. & M. Ins. Co.* 92 Mich. 482, 52 N. W. 1070; *Kleis v. Niagara F. Ins. Co.* 117 Mich. 469, 76 N. W. 155; *Ogle Lake S. Co. v. National L. Ins. Co.* 68 Wash. 185, 122 Pac. 990. But where the company is selected by the agent and in some manner designated as the company in which the insurance is to be written, a binding contract results. *Croft v. Hanover F. Ins. Co.* 40 W. Va. 508, 21 S. E. 854; *Connecticut F. Ins. Co. v. Bennett,* 1 Ohio (N. P.) 71; *Thompson v. Germania F. Ins. Co.* 45 Wash. 482, 88 Pac. 941. In such case the agent becomes the agent of the insured for the purpose of selecting the company. *Michigan P. Co. v. Michigan F. & M. Ins. Co.* 92 Mich. 482, 52 N. W. 1070.

The memorandum which Miss Graebner made on the card clearly designated the company in which the additional insurance was to be written. That this was the import of the memorandum is confirmed by the fact that the policy delivered to the messenger was that of the London Assurance Corporation. The designation was sufficient to establish a binding contract between the *Bedding Company* and the London Assurance Corporation, from which it results that there was no breach of the contract to procure insurance on the part of the defendant.

*By the Court.*—Judgment reversed, and cause remanded with instructions to enter judgment dismissing plaintiff's complaint.