FERM and others, Appellants, vs. MOORE, imp., Respondent.

*January 8—April 1, 1930.*

For the appellants there was a brief by *Bird, Smith,*

*Okoneski & Puchner* of Wausau, attorneys, and *Silverwood & Fontaine* and *P. S. Sheridan* of Green Bay, of counsel, and oral argument by *Charles F. Smith* and *T. P. Silverwood*.

For the respondent Joseph Moore there was a brief by *McGillan & Alk* and *Robert A. Kaftan,* all of Green Bay, and oral argument by *Mr. Kaftan* and *Mr. James H. McGillan.*

The following opinion was filed February 4, 1930:

Fritz, J. Plaintiffs claim, on the one hand, that the defendant Moore is personally liable to them for $10,500 on policies issued by the defendant corporations; and, on the other hand, that he is liable to plaintiffs for $3,750, the amount of a policy which he agreed to procure for plaintiffs, but which the insurer refused to issue. Consideration will first be given to the claim for $10,500.

The record discloses the following facts, either undisputed or found by the trial court upon credible evidence: The plaintiffs August and Celinda Ferm owned land in Outagamie county, Wisconsin, upon which there were buildings valued at $25,000, and used as a roadhouse and dance hall. The plaintiff corporation had a lien on the property and was interested in the insurance, hereinafter referred to, under the usual "loss payable" rider. The defendant corporations were foreign corporations which have not been licensed under sec. 201.40, Stats., to do an insurance business in this state. Moore was licensed, under sec. 209.04, to solicit and place fire insurance with companies licensed to do business in this state; and also had a special license, under sec. 201.49, to procure policies of fire insurance, under the conditions stated in that section, from any company not licensed to do business in Wisconsin. Up to August 12, 1927, the Ferms endeavored to fully insure the property against loss by fire through one Prosser, a near-by banker and insurance agent,

but because of the hazardous character of the risk they were able to procure only $10,000 of fire insurance in licensed companies, and thereupon Prosser informed the Ferms that they could place insurance in other companies, which the licensed companies would not write. The Ferms applied to Moore for such additional insurance. He also was unable to place it with licensed companies. Then, at the Ferms' instigation, on August 12, 1927, Moore procured the four policies, aggregating $10,500, from the defendant corporations, which, through an agency at Philadelphia, issued them completely executed, without any requirement for any signature, approval, or other act on Moore's part. Upon delivery thereof to Moore he forwarded them, without countersigning, to the Ferms, who subsequently paid the premiums.

A fire loss on November 8, 1927, exceeded the amount of all insurance. Plaintiffs complied with all requirements to entitle them to payment of $10,500 under the policies issued by the defendant corporations. Those defendants failed to pay, although judgment against them for the amounts of their respective policies was recovered in this action. As to those policies, the questions on this appeal are whether Moore—although he was specially licensed under sec. 201.49, Stats., to procure policies of fire insurance under that section from non-licensed companies—is liable to the plaintiffs for the amount of those policies either (1) under sec. 201.47, because the companies which failed to pay the loss were not licensed under sec. 201.40, or (2) under sec. 201.44, in so far as sub. (2) thereof provides for the countersigning of policies of fire insurance, and sub. (5) thereof provides that any person "soliciting or placing" insurance without complying with that section shall be liable personally upon such policy to the same extent as the company issuing the same.

In *Case v. Meany,* 165 Wis. 143, 161 N. W. 363, and *Cordy v. Hale,* 177 Wis. 68, 187 N. W. 653, agents who

placed fire insurance in non-licensed companies were held liable to the insured under sec. 201.47 to the extent that the insurers would have been liable if they had honored the policies. However, it did not appear in either of those cases that those agents had been specially licensed, under sec. 201.49, to procure policies of fire insurance from non-licensed companies under the extraordinary circumstances specified in that section. Likewise, no question was raised in either of those cases as to whether there was any violation of sec. 201.44 in respect to the countersigning of the policies by the agent. In those respects the case at bar differs from those precedents, and presents questions which have not been passed upon by this court.

In 1899, and for many years prior thereto, no foreign fire insurance company was authorized to issue policies of fire insurance in this state unless licensed to transact business in Wisconsin, under sec. 201.40. In 1899 sec. 201.47 was enacted, which, so far as here material, provides:

"Any company or person who shall solicit or place insurance in a fire insurance company not authorized to do business in this state shall, in the event of the failure of such unauthorized company to pay any claim or loss within the policy issued, be liable to the insured for the amount thereof to the extent that such company would have been liable; . . ."

It should be noted that the personal liability which that statute imposes in the event of the insurer's failure to pay a loss is imposed upon the person who shall *"solicit* or *place"* such insurance. It should also be noted that up to May 6, 1911, the words "company not authorized to do business in this state" and "unauthorized company," as used in sec. 201.47, included all unlicensed insurance companies, because until then no fire insurance on Wisconsin property could lawfully be solicited or placed in or procured from any non-

licensed company, under any circumstances or conditions. However, in 1911 sec. 201.49 was enacted. That section, so far as now here material, provides:

"(1) The commissioner of insurance . . . may issue to any agent holding a certificate of authority under section 209.04 a license . . . revocable at any time, permitting such agent to act as agent in procuring policies of fire insurance from any corporations, . . . herein called companies, which are not authorized to do business in this state.

"(2) Before any insurance shall be procured under said license, there shall be executed by the agent an affidavit which shall be filed with the commissioner within thirty days after the date of the policy. . . . Such affidavit shall set forth that the agent is, after diligent effort, unable to procure the amount of insurance required to protect the property described in said affidavit, from the companies authorized and licensed to transact business in this state."

Unquestionably, the purpose of sec. 201.49, Stats., was to legalize and relieve from the inhibitions and penalties of sec. 201.47 such acts of agents in relation to fire insurance as the special license to be issued under sec. 201.49 (1) expressly permitted and authorized. That special license still does not permit the licensee to *solicit* or *place* such insurance in unlicensed companies. The permit authorizes the licensee only "to act as agent in *procuring* policies of fire insurance from any . . . companies, which are not authorized to do business in this state." The use of the word "procuring" in that statute, instead of the words "solicit or place," which are used in sec. 201.47, is significant. The act which is specially licensed and authorized under sec. 201.49 is not to act as agent for the insurer in *soliciting* or *placing* insurance. On the contrary, that section confers on the licensee only authority to act in *procuring* insurance, and that act of procuring is performed on behalf and as agent of the person for whom such insurance is procured.

When, as in the case at bar, owners of insurable interests are unable to procure from licensed companies the amount

of fire insurance required to protect the property, and such insurance is then procured, for and on behalf of such owners, from unlicensed companies by a licensee under sec. 201.49, Stats., who fully complies with that section in procuring such insurance, the business thus transacted is certainly authorized and lawful. To the extent of the policies procured by the plaintiffs from the defendant companies through Moore, who was specially licensed and lawfully acting under sec. 201.49 as agent of the plaintiffs in procuring those policies, that business was specifically authorized. To that very limited extent, as to that particular business transacted under those special circumstances and in that particular manner, the policies in suit were specifically authorized and the defendant companies were authorized to do business in Wisconsin within the contemplation and meaning of sec. 201.47, as well as secs. 203.07 (2) and 348.488, Stats. To hold that to the very limited extent of the business thus transacted by Moore the defendant companies were not authorized to do business in this state, and that that particular business was not specifically authorized, would, under the statutes last cited, result in consequences so unreasonable and unjust that mere contemplation thereof convinces us that such was not the legislative intent. Thus, sec. 203.07 provides:

"(2) No unauthorized fire insurance company or other unauthorized insurer shall hereafter make or issue, directly or indirectly, any policy of insurance on property in this state, except as specifically authorized by law. All such contracts are declared to be unlawful, void, and unenforceable, and no action in law or equity shall be maintained on any such contract in any court."

It would be absurd and unjust to hold that section applicable to policies lawfully procured from non-licensed companies under sec. 201.49. After having expressly licensed the procuring of such policies under sec. 201.49, it certainly was not intended that such policies were nevertheless to be considered "unlawful, void, and unenforceable." But that

result is inevitable unless, to the extent of policies procured in compliance with sec. 201.49, such insurance is considered "as specifically authorized," and the insurer is not considered an *"unauthorized* insurer." Likewise, sec. 348.488 provides :

"Any officer, agent, solicitor or broker, or other employee of any unauthorized insurance company or other unauthorized insurer who shall take or receive any application for insurance in this state, or shall receive or collect a premium or any part thereof for such insurance, shall be guilty of a felony, and shall be punished by a fine of not more than five hundred dollars, or imprisonment in the state penitentiary for one year, or by both such fine and imprisonment."

Manifestly, it was never intended that the procurement of a policy in the manner legalized by sec. 201.49, and the forwarding of the premium therefor, should constitute a felony. However, that absurd result would follow unless, again, as to policies procured in compliance with sec. 201.49, the insurer is not considered "unauthorized," or the specially licensed agent, who procured the policy from the insurer, is not considered an agent, solicitor, broker, or employee of the insurer.

When secs. 201.47, 201.49, 203.07 (2), and 348.488, Stats., are considered together, to ascertain the objects and purposes and general scheme of this legislation, it is apparent that, when unlicensed companies issue fire insurance policies, lawfully procured by agents specially licensed under sec. 201.49 to procure such policies to insure Wisconsin property, because of the special circumstances mentioned in sec. 201.49, Stats., (1) such policies, in view of sec. 203.07 (1), are deemed to be made and effected in Wisconsin; (2) such policies are specifically authorized, and hence are not void under sec. 203.07 (2), and the agent taking the application therefor and collecting the premium does not thereby violate sec. 348.488 and become guilty of a felony; and (3) to the extent of policies so procured, the unlicensed companies are authorized to do that business in Wisconsin, and the special

licensee under sec. 201.49, who merely procured those policies, is not personally liable in the event of the failure of the insurer to pay losses within the policies issued.

For the reasons stated, Moore's procurement of the policies in suit, under and in compliance with sec. 201.49, did not constitute the soliciting or placing thereof within the meaning of sec. 201.47; to the extent of policies so procured from the defendant companies they were not unauthorized to do business in this state; and consequently, on those policies, Moore is not liable under sec. 201.47.

Is Moore liable under sec. 201.44, Stats., for failing to countersign the policies? He did paste the customary gummed label on the outside of the policy, which is a form of indorsement permissible under sec. 203.06 (4), but is hardly equivalent to the countersigning contemplated by sec. 201.44 (2). Sub. (5) of sec. 201.44 provides:

"Any company or person soliciting or placing insurance without complying with this section shall, in addition to other penalties provided by law, be liable personally . . . to the same extent as the company issuing the same."

The only respect in which Moore did not comply with sec. 201.44 is that he failed to countersign the policy in accordance with sub. (2) of sec. 201.44, which provides, "In case of fire insurance the agent shall countersign . . . the policy. . . ." On their face the policies in suit had no provision or space reserved for countersigning by a Wisconsin agent. They had no provision to the effect that they should not be valid until countersigned by some authorized person in Wisconsin, as sec. 203.06 (1) declares permissible in the standard fire insurance policies. They were complete in all respects when procured from the insurers by Moore, acting on behalf of the plaintiffs. There was no occasion and there does not seem to be any reason because of which Moore should have countersigned those policies.

Again, it is significant, and probably sufficient, to note that the personal liability contemplated by sub. (5) of sec.

201.44 is imposed only upon "any company or person *soliciting* or *placing* insurance." The statute does not purport to impose any such liability on one who merely *procures* such insurance. Thus, again, there is indicated the legislative recognition of a distinction between the soliciting, the placing, and the procuring of insurance.

However, appellants contend that sub. (3) of sec. 201.49 providing that "The insured may, in writing, relieve the agent from the personal liability imposed by section 201.44, which release shall affect all insurance written within one year after the date thereof," discloses that it was contemplated that sec. 201.44 did impose personal liability upon agents who procured insurance under and in compliance with sec. 201.49. If there could be no such personal liability, then why does sub. (3) of sec. 201.49 expressly authorize the insured to relieve the agent from such liability? Does not the reference in sec. 201.49 (3) to personal liability imposed by sec. 201.44 imply the existence of such liability? In seeking an answer to those questions, another question arises, which should be answered first, but seems to lead merely to another legal *cul de sac* in the labyrinth of statutory insurance regulations. What—if any—personal liability to an insured was imposed by sec. 201.44 at the time the legislature, in enacting sec. 201.49 (3), referred to "the liability imposed by sec. 201.44?"

Sec. 201.49 (3), Stats., formerly sec. 1919*m* (3), was enacted as ch. 87, Laws of 1911, and went into effect on publication on May 6, 1911. However, on May 6, 1911, there was no such provision as sub. (5) of sec. 201.44 (formerly sec. 1919*a*), Stats. (Sec. 201.44, including sub. (5), was not finally passed by the legislature in its present form until June 16, 1911, and was published, as ch. 436, on June 26, 1911.) Sec. 201.44 as it was on May 6, 1911, when sec. 201.49 (3) was enacted, imposed no personal liability whatsoever upon the agent for the benefit of an

insured. Consequently, as no such personal liability then existed by virtue of sec. 201.44, the reference to that section in sec. 201.49 (3) was meaningless at the time of the enactment of the latter section, and it could not constitute an implied recognition of such personal liability. As hereinbefore stated, up to the time of the enactment of sec. 201.49 insurance on Wisconsin property by non-licensed companies could not lawfully be solicited, placed, or procured under any circumstances. At that time there was a provision in sec. 1919a which required agents of licensed foreign companies to countersign all policies, but that could not have been intended to apply to unlicensed foreign companies, because they could not lawfully issue policies on Wisconsin property, enforceable in Wisconsin, under any circumstances. However, even as to that requirement and the other duties imposed on an agent, the statute expressly stated the purpose thereof to be "to the end that the state may receive the taxes required by law to be paid on the premiums collected." It did not provide that a personal liability to an insured would result from any failure to comply with those requirements. The uncertainties and confusion in these statutes may require legislative revision and clarification. In their present form, secs. 201.44 and 201.49, Stats., do not warrant the conclusion that Moore, under the circumstances of this case, is personally liable because the policies were not countersigned by him.

As to plaintiffs' claim against Moore on account of the policy which the insurer failed to issue, the facts established by undisputed evidence, or found by the learned circuit judge, are as follows: Shortly prior to November 2, 1927, Prosser informed Ferm that $3,750 of insurance in licensed companies on the same property had been canceled and that he was unable to replace it with licensed companies. Ferm then applied for that insurance through one Ollinger, at Green Bay, Wisconsin. Ollinger was also un-

able to place it in licensed companies and so informed Ferm, who then requested Ollinger to obtain the insurance through Moore. Moore could not place it with licensed companies, and finally agreed to procure $3,750 of insurance from one of the defendant companies. Moore informed Ollinger that he had placed a "binder" on the property to take effect at noon on November 2, 1927, and then promptly applied, on plaintiffs' behalf, to obtain a policy from the Anchor Insurance Company and Investment Corporation, Ltd., through the same insurance agency at Philadelphia which had issued the other policies. That policy was never issued, although on inquiry of Moore after the fire on November 8, 1927, he informed Ollinger that it was in force. Moore testified in explanation of the term "binder," and in relation to performance on his part, as follows:

"The word 'binding' in insurance parlance is used when we take an application and we accept the application as a binder so that the policy when written up is effective as of that date. The company, however, reserves the right to reject or issue the policy as of the date of the binder. In authorized companies we do not need applications—we write our own policies right here and the companies simply reserve the right to cancel by wire, as is very often done. In this case I sent forward to the company or their agent the application for the $3,750 insurance to the unauthorized company. The company wrote back and refused to issue this policy on account of the loss having occurred. There wasn't anything that an agent could do other than what I did. I sent the application forward in due course before the fire. I had to make an affidavit that we had exhausted our facilities for placing it in authorized companies before we could place it in unauthorized companies. When that was done, I sent the application forward before the fire, but never received the policy."

That testimony is not contradicted. All parties were charged with knowledge that, as a matter of law, Moore could not place such additional insurance in one of the defendant companies, and that all that he could lawfully con-

tract to do in relation to such insurance was to procure it on behalf of plaintiffs. The foregoing facts establish that Moore promptly did all that he could lawfully do under the laws of this state. As the placing of the insurance and the issuance of the policy were obligations which all parties knew that Moore could not lawfully contract to assume, he cannot be held responsible for the failure of the insurer to issue the policy. Under the circumstances, there was no breach of contract on Moore's part, and he is not personally liable. *Milwaukee Bedding Co. v. Graebner*, 182 Wis. 171, 196 N. W. 533.

It follows that the judgment must be affirmed as to the defendant Moore.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on April 1, 1930.